COLUMBUS SPA, INC., a Corporation, Appellant, *v.* STAR COMPANY, a Corporation, Respondent.

First Department, March 19, 1926.

Landlord and tenant — liability of landlord to furnish heat — plaintiff's assignors rented part of building for restaurant — lease provided that landlord would furnish heat without cost, but should not be liable for failure to supply same — landlord knew that plaintiff's assignors intended to use leased premises for restaurant and from location that restaurant would remain open large part of night — landlord furnished heat for some time and then declined to furnish heat any longer — no adequate remedy at law — landlord is bound under lease to furnish heat required by plaintiff to conduct its business.

The plaintiff is entitled to a temporary injunction against the defendant restraining it from shutting off the heat after eleven P. M. during the winter months from a restaurant operated by the plaintiff, since it appears that the lease to plaintiff's assignors of a part of the building in question provides that the defendant will furnish heat between the tenth day of October and the first day of May in each year, without additional charge, but that the landlord will not be liable for any failure to supply heat; that the defendant knew that the premises were to be used as a restaurant and, in view of its location in the theatre district of New York city, that it would be used for a greater part of each night; that the defendant did furnish heat from the tenth day of October until about the tenth of January, when it declined to furnish any more heat on the ground that it was not obligated to do so by the terms of the lease; and that if heat is not furnished by the defendant the plaintiff will be required to close its restaurant at eleven P. M. or install a new heating plant at a great expense.

In view of the fact that the lease was drawn strictly against the tenant and that there is no provision therein as to the hours of the day during which heat will be furnished, the clause in the lease relating to the heat will be construed as requiring the landlord to furnish sufficient heat to properly conduct the restaurant, considering the surrounding circumstances and locality, and furthermore, this construction is in conformity with the practical construction placed upon that clause by the parties, and any other construction of the lease would not be compatible with the renting of the premises for restaurant purposes or with the apparent intention of the parties in executing the lease.

The plaintiff has no adequate remedy at law.

APPEAL by the plaintiff, Columbus Spa, Inc., a corporation, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 21st day of December, 1925, denying plaintiff's motion for a temporary injunction.

*John G. Turnbull,* for the appellant.

*Joseph B. Kaufman,* for the respondent.

MARTIN, J. The plaintiff seeks a temporary injunction restraining the defendant from shutting off the heat after eleven P. M.

each night during the winter months in premises occupied by the plaintiff as tenant.

The appellant contends that it is entitled to heat by reason of the provisions of a lease entered into during the month of August, 1924, between the defendant and plaintiff's assignors, which lease provides in paragraph " sixth " thereof as follows: " The landlord will furnish steam heat to warm the halls, stores and basement stores, between the tenth day of October and the first day of May in each year without additional charge to the tenant; but inasmuch as no additional rent is charged for such heat, the landlord shall not be liable for any failure to supply the same."

There are no other material clauses relating to the heating of the premises to be found in this lease. It does recite, however, that the property is to be used for a restaurant business to be conducted by the tenant.

During the first month and a half that plaintiff occupied the premises, being the month of November and part of the month of December, 1924, the defendant furnished heat throughout the entire night. On or about January 9, 1925, the defendant notified plaintiff that it would not continue to furnish heat after the current winter, contending that it was not obligated to do so by the terms of the lease.

Thereafter the plaintiff conducted negotiations with the defendant in an effort to settle their differences, but without result.

The plaintiff's business requires that heat be furnished after eleven o'clock at night, and plaintiff has demanded that the defendant furnish such heat, but defendant has refused to do so. Because of this failure to furnish heat, it will be necessary for the plaintiff to either close its restaurant shortly after eleven o'clock at night during the winter season, or to install an independent heating system at great expense to the plaintiff for its installation and maintenance.

The plaintiff contends that by reason of the facts set forth in the moving papers it will suffer irreparable damages unless defendant is restrained from shutting off the heat, and demands judgment granting an injunction restraining the defendant from banking the fires of the heating plant between October tenth and May first, after eleven o'clock at night, and for damages.

The defendant's answer denies all of the material allegations of the complaint in reference to the obligations of the defendant to furnish heat, and for a separate and distinct defense alleges that the plaintiff has an adequate remedy at law.

On the argument our attention was called to the peculiar terms of the lease, providing that if heat were not furnished the landlord would not be liable for damages. The lease provides as follows:

" * * * but inasmuch as no additional rent is charged for such heat, the landlord shall not be liable for any failure to supply the same."

It is argued for plaintiff that although the defendant may not under certain circumstances be liable for damages in case of failure to supply heat, nevertheless, the defendant by contract having specifically agreed to furnish sufficient heat to conduct a restaurant business, the landlord may not now refuse to supply such heat. A failure to supply heat because of accident or some other unforeseen cause does not permit a refusal to supply heat after eleven o'clock P. M. each night.

The appellant contends (1) that the express terms of the lease require the landlord to furnish heat between the dates specified without limitation and without reference to day or night; (2) that the conduct of the landlord for a period of more than a month immediately subsequent to the entrance by the tenant into possession of the premises placed a practical construction upon the heat clause to the effect that heat was to be furnished throughout such hours of the day and night as the tenant required it; (3) that only by injunction may the plaintiff secure its rights under the lease in respect to the heating of the premises; and (4) that a temporary injunction is necessary because continuing damage irreparable in estimation is occurring.

The leased premises consist of a store running through from Broadway to Central Park West, in the American Circle Building, the store being located about forty feet north of the Columbus Circle end of the building.

An examination of the lease discloses the fact that all of its covenants are drawn strictly against the tenant and that each provision obligating the landlord to do or perform or suffer any act to be performed is strictly limited. Under these circumstances it is reasonable to suppose that had the landlord intended to limit the time of day or night within which heat would be supplied, such limitation would have been distinctly expressed.

The lease not only provides that the tenant is to use the premises for restaurant purposes but that the tenant shall have, with the exception of one other described restaurant, the exclusive right to conduct a restaurant in the building. The rental of the premises is substantial, beginning at $17,875 for the first year and advancing to $21,875 for the tenth year.

It is argued by the tenant that the landlord knew of the contemplated purpose for which the premises were rented and the necessity of having heat for restaurant purposes, and that the tenant would continue to use the premises at least until a late

hour in the night, even though defendant's contention is that no representations were made that the restaurant was to remain open all night.

This restaurant is located in a district where many people are abroad after the theatres have been closed, some of whom customarily stop to obtain refreshments before returning home.

The fact that the heating plant in the building was to be maintained until eleven o'clock only at night was not disclosed to the tenant at or before the time the lease was made and the affidavits submitted for plaintiff allege that plaintiff's assignors had no means of knowing that fact. Under the landlord's contention in regard to the obligation to heat the premises, it should be the sole judge of that question and would be justified in refusing to heat the premises after the usual office hours from five o'clock in the evening. Such a construction would not be compatible with the renting of the premises for restaurant purposes with a provision in the lease to furnish heat.

It is a well-settled canon of interpretation that in seeking for the intent of the parties, the fact that a construction contended for would make the contract unreasonable may be properly taken into consideration. The court should endeavor to give a construction most equitable to both parties and not a construction which would give one of them an unreasonable advantage over the other. (*Fleischman* v. *Furgueson,* 223 N. Y. 235; *Schoellkopf* v. *Coatsworth,* 166 id. 77; *Sanford* v. *Brown Bros. Co.,* 208 id. 90.)

The intention of the parties should be gathered from the entire instrument. (*People* v. *Gluck,* 188 N. Y. 167; *Heryford* v. *Davis,* 102 U. S. 235.)

In the case of *Berlinger* v. *MacDonald* (149 App. Div. 5) it was held that notwithstanding the fact that there was no covenant in the lease that the landlord should supply the necessary heat to keep the apartment warm and comfortable, he was nevertheless obligated to do so. Such a covenant the court said would be read into the lease. By an express provision in the lease the defendant was bound to use the apartment leased only for a private dwelling for himself and his family. He could not so occupy it unless artificial heat were furnished in cold weather.

The construction placed upon a contract by the parties to it is of course very relevant in determining the meaning of the contract. (*Fleischman* v. *Furgueson, supra; Gillet* v. *Bank of America,* 160 N. Y. 549.)

The affidavits submitted in support of the contention of the plaintiff set forth that the landlord furnished heat throughout the night, without question, for the period from November 24, 1924,

to January 9, 1925. The affidavits submitted in opposition to the motion on behalf of defendant state that heat was not supplied throughout the night except from the day before Christmas, 1924, and that such heat at night was supplied without the knowledge of the landlord; that when the landlord discovered the fact on January 5, 1925, that heat was being supplied, the landlord's agent spoke of the matter to the tenant, and on January ninth wrote a letter disclaiming liability to furnish heat. That the landlord did supply heat for a portion of the time is not denied.

The leading case dealing with the construction of a heating clause in a lease as regards an application for an injunction to compel the landlord to furnish heat is the case of *Halperin* v. *McCrory Stores Corp.* (207 App. Div. 448), affirmed in the Court of Appeals (239 N. Y. 547). In that case the court held that a clause which provides as follows: " The landlord agrees to furnish such heating to the demised premises as the plant at present installed will provide," required the landlord to furnish the necessary heat to keep the building warm. The court said: " When the lease was renewed I think each party was entitled to have and to expect to furnish heat to the same extent and of the same character as had theretofore been furnished. The intent of the parties is the controlling factor, when not illegal, in construing an agreement. What possible intent could the parties to this lease have had when they renewed it in the same terms other than that the lessee should have the same heat under the new agreement that he had had under the old. If this provision in the lease was subject to change by the installation of a new heating system it should have been provided for. The heating plant then installed furnished heat for both day and night work."

It must be borne in mind, as already pointed out, that the lease was prepared by the landlord. It was evidently well known to the parties that the tenant intended to use the premises as a restaurant in a district where nightlife is predominant, and that it would be necessary for the landlord to heat such a restaurant. The landlord did not stipulate that it would furnish heat for one hour of the day or night or for twenty-four hours. No limitation upon time is fixed in the lease. A reasonable construction, therefore, is that sufficient heat should be furnished to properly conduct the restaurant.

Several rules of construction warrant this conclusion. The first is that the intention of the parties, taking into consideration the surrounding circumstances, should govern. It is reasonable to assume that under all the circumstances the landlord intended to heat these premises so that the tenant might successfully operate

a restaurant, bearing in mind the location of the restaurant and the requirements of the neighborhood. That is all that the tenant seeks to have done. Secondly, if there is any ambiguity in the clauses of the lease, although we do not believe there is, the tenant is entitled to the benefit of a construction most favorable to him. In addition, however, these parties are bound by a practical construction of this lease, for the reason that during part of the first winter the landlord, recognizing its responsibility, furnished sufficient heat to conduct the restaurant business in conformity with the surrounding circumstances, taking into consideration the neighborhood where the restaurant was located.

It is not for the landlord to determine when heat shall be furnished, nor to give his own construction of a written instrument. The landlord must abide by that construction which will best effectuate the intention of the parties when the lease was made. The landlord here says there can be no damage if it fails to give heat and then contends that equitable relief should not be given for the reason that plaintiff has a remedy at law and may collect damages for failure of the landlord to perform the contract. There is a clause in the lease which, under certain circumstances, may be enforcible, which expressly provides that there shall be no damages for failure to furnish heat and this case, therefore, is peculiarly one for equitable intervention.

We are of the opinion, therefore, that the order should be reversed, with ten dollars costs and disbursements, and the motion for an injunction granted, with ten dollars costs.

DOWLING, MERRELL, FINCH and McAVOY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.