BRYANT PARK BUILDING, INC., Landlord, *v.* JOHN ACUNTO, Tenant.

Municipal Court of New York, Borough of Manhattan, Ninth District, November 30, 1928.

*Bond & Babson*, for the landlord.

*Charles Fredericks*, for the tenant.

GENUNG, J.   The landlord seeks to dispossess the tenant for non-payment, in addition to the rent of $3,333.33 for the month of June, 1928, of the sum of $5,739.82, representing seven and one-half per cent of the increase in taxes over the levy of 1924 on the premises situated at the northeast corner of Sixth avenue and Forty-second street, borough of Manhattan.   The tenant contends that the amount for which he is liable on account of increase in taxes over 1924 is the sum of $2,668.67.

The lease between the parties herein provides:

" 3. That from and after October 1, 1925, in addition to the above mentioned rental, instead of the tenant paying the taxes provided to be paid by the Third paragraph of agreement dated May 1, 1924, and annexed to and forming part of this lease, the tenant agrees to pay as additional rent seven and one-half (7½) per cent of the increase in the amount of real estate taxes over and above those assessed for the year 1924, which may be laid, assessed or imposed upon the premises known on the Tax Map of the Borough of Manhattan, City of New York, as Lot No. 1, Block No. 1258, for land and building, of which the demised premises are a part, in any and every year during the said renewal period. Such amount to be paid within five (5) days after the amount thereof has been demanded by the landlord, and it shall be collectible as rent.   A tax bill shall be sufficient evidence of the amount of taxes and for calculation of the amount to be paid by the tenant."

The rent demanded was paid without prejudice to the rights of either party and the dispute as to the amount of taxes due from the tenant was submitted on an agreed statement of facts.   The following facts are necessary in arriving at a decision:

| YEAR | Total assessment | Land | Building | Amount of taxes | Tax rate | Amount of taxes | |
|---|---|---|---|---|---|---|---|
| | | | | | | On bldg. | On land |
| 1924 | $3,185,000 | $2,725,000 | $460,000 | $87,269 00 | .0274 | $12,604 | $74,665 |
| 1925 | 3,225,000 | 2,725,000 | 500,000 | 86,752 50 | | | |
| 1927 | 5,100,000 | 3,700,000 | 1,400,000 | 137,700 00 | | | |
| 1928 | 6,000,000 | 4,000,000 | 2,000,000 | 163,800 00 | .0273 | 54,600 | 109,200 |

In 1926 the landlord increased the height of the building by adding nine stories and, so far as the record shows, made no other structural changes or improvements.   In 1927 the tenant paid the

sum of $1,959.82 as his share of the increase in taxes, which was based on the full valuation of the land as shown in the tax statement but only on $500,000 as the valuation of the building, although at that time the height had been increased by nine stories and the valuation had been increased by $900,000. In 1925, before the nine stories were added, the building was assessed at $500,000, and in 1926 the assessed valuation was the same on the building. In 1924 the building was assessed at $460,000. Consequently the valuation put on the building by the city before the addition of the nine stories was $40,000 greater than the valuation in 1924.

The real question to be determined is, when a tenant agrees to pay a percentage of the increase in taxation on the premises in which he has leased space, if the increase is caused by the acts of the landlord in adding to the height of the building on the premises, whether the provision in the lease as set forth above requires the tenant to pay on the basis of a new valuation, as caused by the acts of the landlord, or to continue to pay on the basis of the structure which existed at the time of the signing of the lease. It first must be assumed, for the purposes of this case, that the increase in the assessed valuation on the building from the sum of $500,000 in 1925 to $2,000,000 in 1928 was due to the added nine stories. In the valuation of land for tax purposes intangible elements involving unearned increments and location enter into consideration. However, in the valuation of buildings for tax purposes, the structural value of the building is its value for assessment purposes. (*People ex rel. Brokaw Bros.* v. *Cantor*, 120 Misc. 560; *Matter of City of New York*, 198 N. Y. 84.) The only evidence contained in the agreed statement of facts, which can be construed as showing a cause for an increase in valuation of the building, was the addition of the nine stories since there is no evidence of any other improvements. Hence, the extra assessment on the building of $1,500,000 must have been caused by the acts of the landlord in increasing the height by adding these nine stories. It follows, therefore, that in determining the increase of taxation over 1924, out of which is to be computed the amount of seven and one-half per cent for which the tenant is liable, there must be omitted from the calculation the sum of $1,500,000 which represents the valuation by the city of the additional nine stories. In other words, the provision of the lease above stated does not require the tenant to pay any part of the increased taxation caused by the acts of the landlord in increasing the valuation of the building by adding nine stories to it.

In construing the said provision of the lease, the rule must be followed that " If there is any uncertainty or ambiguity as to the meaning of the agreement, it should be resolved in favor of the

plaintiff, [borrower] as it was the defendant [bank] who prepared this contract. * * * In the construction of written contracts it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion and apparent object of the parties, to determine the meaning and intent of the language employed. Indeed, the great object, and practically the only foundation of rules for the construction of contracts is to arrive at the intention of the parties. * * * '·Contracts are not to be interpreted by giving a strict and rigid meaning to general words or expressions without regard to the surrounding circumstances or the apparent purpose which the parties sought to accomplish.' " (*Gillet* v. *Bank of America*, 160 N. Y. 549.)

The same rule was followed in *Herald Square Realty Co.* v. *Saks & Co.* (215 N. Y. 427), which was a case somewhat similar to the problem involved herein. In that case the tenant agreed to keep " the demised premises and every portion thereof, inside and outside, * * * in good order, condition and repair." At the time of the execution of the lease it had long been the common practice of the authorities to sanction and permit projections of parts of buildings upon the streets; but such authorities have since decided that the display windows on the ground floor of the buildings were encroachments on the street and directed their removal. The question was whether the tenant was obligated to pay the cost of this removal. The court held on examination of the lease that its language, construed in the light of contemporaneous regulations, usages and customs, required the conclusion that it was not the purpose or intent of the parties to subject the tenant to an expense caused wholly by extraordinary and unforeseen building alterations made necessary by a subsequent change in the policy of the government. Certainly it would not be the intention of the parties to subject the tenant to an expense caused wholly by extraordinary and unforeseen building alterations made on the initiative of the landlord. As is well settled law, it is the obligation of the promisee on a contract that he will do nothing which may hinder or obstruct the promisor in doing the particular thing. (*Patterson* v. *Meyerhofer*, 204 N. Y. 96; *Young* v. *Hunter*, 6 id. 203.) It would certainly be distorting the intent of the parties to hold that they contracted with anything other in view than the building as it then existed. Furthermore, in construing the said provision of the lease the acts of the parties must be controlling. It is well settled, where there is doubt as to whether a lease requires a tenant to do certain things, its practical construction by the act of the parties must be controlling. (*Smith* v. *Taranto*, 140 N. Y. Supp. 794; *Columbus Spa, Inc.*, v. *Star Co.*, 216

App. Div. 218; *Manning Realty Corp.* v. *Topping Bros.*, 120 Misc. 592.) In the instant case, in 1927 although the building had been assessed for $900,000 more than the year preceding, the tenant paid and the landlord accepted a percentage of the increase of taxes based on the valuation of the building at $500,000, that is, the valuation of that portion of the building representing the building as. it stood at the time of the execution of the lease.

A computation of the obligation of the tenant would occur in this manner: The increase in assessed valuation of the building as it existed at the time of the execution of the lease over its valuation in 1924 is $40,000; the increase in the valuation of the land is $1,275,000, thus making a total increase in valuation of $1,315,000. With a tax rate of .0273 this would mean that the amount of tax representing the increase of 1928 over 1924, as far as regards the portion of the building affecting the liability of the tenant to pay percentage of the increase of taxes, would be $35,899.50. Of this amount seven and one-half per cent is the sum of $2,692.46.

A final order should, therefore, be entered in favor of the landlord and against the tenant, fixing the amount of the taxes due at the sum of $2,692.46 and awarding a money judgment for that sum, with interest and costs. Five days' stay.