James O. Moore, J.
This is an application, brought on by order to show canse, for a temporary injunction in an action instituted by the plaintiffs to enjoin permanently the defend *611 ants from terminating the water and utility services furnished the dwelling quarters owned hy the corporate defendant and occupied hy the plaintiffs and others.
In July of 1969 the facilities known as the Medina Labor Camp were acquired by the corporate defendant. The defendants Cornelius Vanden Bosch, John J. Story, and Vincent ■Cardone are presently the principal stockholders, officers and directors of the corporation. During part of 1969 and throughout 1970, the premises were operated by the corporate defendant as a farm labor camp pursuant to the provisions of part 15 of the State Sanitary Code under a permit issued by the Commissioner of Health, Orleans County Health Department. The 1970 permit allowed maximum occupancy of 96 people. In December of 1970 an application was made to renew the permit for the year 1971 but no such permit was issued nor does it appear that any temporary 30-day permit was in effect during the year 1971. (10 NYCRR 15.20.)
As evidenced by the expenses of the defendant corporation, the facilities were operated on a year-round basis and the allegation of the complaint that the plaintiffs as well as the other tenants paid the defendant a stipulated monthly or weekly amount for units occupied which included hot and cold water, electricity and heat stands undisputed. The plaintiffs contend that this was a rental agreement on a monthly basis while the defendants maintain that no landlord-tenant relationship existed. Nonetheless the premises were occupied by approximately 90 people under arrangements by which rents were collected weekly from the occupants and utilities were supplied and paid for by the defendant corporation.
Although the defendant contends that the provisions of the Sanitary Code governing migrant labor camps preclude the creation of a landlord-tenant relationship, it is difficult to conceive how legislation designed and intended to ensure minimum health standards can be construed, by implication, to prohibit agreements between the owners and occupants with respect to other terms and conditions of occupancy such as the duration and the amount of compensation or ‘ ‘ rent ” to be paid for particular units. (10 NYCRR 15.1 [c].) Moreover the defendants’ operations during the year 1971 were carried on without any permit. Since 10 NYCRR 15.20 (a) prohibits the operation of a migrant labor camp without a permit, the defendants cannot claim the benefit of any exemptions from the duty of a landlord arising out of the status of the facilities as a migrant labor camp.
*612 In April of 1971 disputes arose between the occupants and the owners with respect to the maintenance of the facility, the necessity of improvements and the relationship between the owners and the occupants. A group known as the Birdseye Rights Coalition was formed claiming to represent the occupants, extensive and inordinate demands were made upon the defendant, and beginning April 30, 1971 a rent strike was instituted. The defendants contend that this activity was organized and directed by the attorney for the plaintiffs and charge that they have in effect been deprived of the ownership of the property by threats of physical violence and prevented from going on the premises as well as being- deprived of their rents.
On April 30, 1971, the day the rent strike began, the Orleans County Health Department informed the defendants that the premises did not comply with the provisions of the Sanitary Code and on May 6, 1971 directed the defendant to remove the occupants from the property. On May 10, 1971 the defendant notified the gas and electric companies and the Village of Medina as the supplier of water that it would no longer be responsible for the payment of bills, and services were in fact cut off on that day. Later in the day they were restored at the behest of the Mayor of Medina on the ground that the termination of such services created a health hazard. It is the position of the defendants that these services are currently being furnished by persons other than the defendants and they disclaim all responsibility for the cost thereof.
On May 11, 1971 this action was instituted by order to show cause containing a temporary restraining order issued by the Honorable William Gr. Easton. On May 24, 1971 the restraining order was continued and the action was transferred to the June Term of this court scheduled to be held in Albion.
The sole question before this court is whether or not the defendants are entitled to a temporary injunction preventing the defendant corporation from terminating the utilities supplied this facility pending the final determination of this action. There is not here involved the right of the defendant to institute and maintain summary or other proceedings for the eviction of the plaintiffs and the other occupants, either as trespassers or by reason of nonpayment of rent, destruction of improvements, violence directed towards the defendants to dispossess them of their ownership and control of the property, or impossibility of continued occupancy by reason of inability to meet the standards of the Sanitary Code or the Medina Minimum Housing Standards Ordinance. Although it *613 is conceded that the housing units fail to conform to either the Sanitary Code or the Medina ordinances, and the defendants’ papers in opposition to the motion contain strong support of the threats of violence directed at the defendants, the only forms of relief sought by the defendants in their opposing papers are disclosure of the membership of the coalition, co-operation with the defendants and the local governmental agencies to effect an orderly closing of the accommodations, and a prohibition against threats of violence and other conduct interfering with the defendants’ coming on the property and exercising rights of ownership. No counterclaim is asserted for additional relief.
Moreover the determination of this motion does not in any wise limit or otherwise affect the rights of the Orleans County Health Department or Village of Medina to take any action they may deem necessary or appropriate to enforce the Sanitary Code, the village ordinances or other applicable provisions of the Public Health Law in the discharge of their respective duties.
Thus, the only issue is whether or not the defendant corporation, by its own unilateral action of directing the termination of utility service, can, without resort to judicial process, effectively bring about the immediate eviction of some 90 people including men, women and children from the housing facilities they presently occupy, at the risk of creating a very substantial hazard to the public health. Section 235 of the Beal Property Law makes clear that the public policy of this State prohibits the exercise of this drastic form of self-help by a “ lessor, agent, manager * * * of any building, or part thereof, the lease or rental agreement whereof by its terms, express or implied, requires the furnishing of hot or cold water, heat, light ”. The courts have construed this section in a manner designed to protect the interest of occupants even under circumstances where rent was being withheld or disputes existed between the parties. (Columbus Spa v. Star Co., 216 App. Div. 218; Traitel Marble Co. v. Chase, 35 Misc. 233; Welton v. City of Lockport, 13 Misc 2d 341.)
In the instant case it must be determined upon the trial of the action whether or not the plaintiffs were entitled to the protection of this section as tenants or occupants under a rental agreement, and if so whether they have forfeited such protection by their own actions in ousting the owners from control of the property. The granting of temporary interim relief, of necessity, involves a balancing of the interests of the parties. A denial of the relief sought herein would for *614 all intents and purposes constitute a resolution of the controversy against the plaintiffs since they would he compelled to vacate the premises before a judicial determination could be made. In addition, as noted above, and as recognized by responsible local officials, there would be created a highly dangerous public health hazard.
On the other hand, the owners of this property cannot be compelled to continue its operation for an indefinite period of time and to assume the financial burden of supplying utility service, particularly in the face of the rent strike and the actions of the occupants barring the owners from the exercise of their ownership rights. Account must be taken of their property rights including the right to use the facilities in the manner they deem best suited for their own interest.
The plaintiffs have made a prima facie showing that they are entitled to the protection afforded by section 235. This is not dispelled by the defendants’ papers in opposition to the motion. The public interest, as well a-s the balance of the consequences to the parties of the granting of temporary relief, dictates that a modus vivendi be formulated to preserve intact the status quo pending the ultimate determination herein. (Columbus Spa v. Star Co., 216 App. Div. 218, supra; Elishewitz & Sons Co. v. Barry Equity Corp., 280 App. Div. 336; Curcio v. Lounsbury, 64 N. Y. S. 2d 128.)
Accordingly, a temporary injunction will issue restraining the defendants from terminating public utility services previously furnished the plaintiffs and requiring the defendant corporation to pay for such utility services. This relief is granted upon the following terms and conditions:
1. The plaintiffs will furnish the defendant corporation with adequate security to reimburse it for all utility costs of the facility from May 1, 1971 to the date of the determination of this action, the discontinuance thereof, or such time as all the occupants actually leave the premises and the furnishing of utilities is no longer necessary. Such security will be made available to the defendant corporation for the payment of such utility charges in the event the plaintiffs fail to secure a permanent injunction in this action for any reason.
2. The plaintiffs, their agents and those acting in concert with them will permit the defendants and their agents to come on the premises at reasonable times for the purpose of collecting rents, maintaining and inspecting the property and for all other lawful purposes in connection with their ownership of the property. Any acts or threats of violence will be deemed a breach of this condition.
*615 3. The plaintiffs, their agents and those acting in concert with them will comply with all lawful orders of governmental agencies issued to them within the scope of the respective authority and jurisdiction of such agency.
The court reiterates that the granting of this temporary, relief is without prejudice to the rights of the defendants and local governmental agencies including the Village of Medina and the Orleans County Health Department to institute and maintain appropriate proceedings or actions with respect to the continued occupancy of these facilities. As was pointed out to the parties herein the determination of this motion, involving as it does a very narrow issue, cannot effect a solution to the social problems which inhere in the circumstances surrounding this litigation.