216

CREDIT EXCHANGE, INC., Appellant, v 461 EIGHTH AVENUE ASSOCIATES, Respondent.

First Department, September 9, 1986

### APPEARANCES OF COUNSEL

*Glenn Backer* of counsel *(Dahan & Nowick,* attorneys), for respondent.

*Herbert L. Finkelstein* of counsel *(Jaffin, Schneider & Conrad,* attorneys), for appellant.

### OPINION OF THE COURT

LYNCH, J.

The plaintiff was the lessee of the twentieth floor of 5 Penn Plaza under a series of leases commencing in 1955. Its latest lease was executed on August 27, 1979 with the defendant's predecessor in title, to expire on December 2, 1985. The rent included a proportional payment of real property tax increases as follows: were the taxes on the land and building to be increased beyond $203,342.50 annually, the plaintiff was to pay 4½% of the increase to the defendant in equal quarterly installments "on or before the first day of the respective months in which real property taxes may be paid during the term without interest or penalties to the City of New York". Real estate taxes in the city are on a fiscal year basis ending on June 30th. Since they are now payable semiannually, on July 1 and January 1, the defendant billed the plaintiff semiannually rather than quarterly as provided by the agreement.

The defendant purchased the property in 1981. It claims to have redone the main entrance and lobby, installed two new building canopies and two new oil burners, added air conditioning to the lobby, installed a new security system, smoke detectors, telephones, speakers, and computerized elevators, upgraded the freight elevators, renovated the freight receiving areas, resurfaced the exterior of the building, replaced most of the windows, and added new lighting to the fire stairways and exits and new standpipe hoses. Two more floors were added to the building as well as elevator service to those floors.

Until the final year of the lease, the plaintiff paid timely and fully the bills for tax increases. During the latter years, while the tax rates remained stable, the assessed valuation dropped and then increased as follows:

| | |
|---|---|
| 1982/1983 | $ 6,240,000 |
| 1983/1984 | $ 4,800,000 |
| 1984/1985 | $ 7,000,000 |
| 1985/1986 | $13,110,000 |

The plaintiff, faced with a 1985/1986 tax bill of $46,658.36 as compared with $20,648.59 for the previous year and believing that the increase was due to the addition of the two floors rather than to any improvements benefiting its twenty-second floor, determined that its tax obligation for 1985/1986 was limited to $20,648.59 and paid accordingly. In response, the defendant served a notice of nonpayment. The plaintiff commenced an action for a judgment declaring that its 1985/1986 tax obligation was limited to that of 1984/1985 and moved for a preliminary injunction against the defendant's terminating its lease or recovering possession of the premises. The defendant counterclaimed for a judgment declaring the tax obligation to be $46,658.36, and granting it possession of the premises and an award of the tax arrears. It cross-moved for summary judgment dismissing the complaint.

Special Term granted the cross motion to the extent of dismissing the complaint and directed the defendant to institute a nonpayment proceeding for the tax arrears in Civil Court. So holding, it denied as moot the plaintiff's motion for a preliminary injunction. It found the tax increase apportionment clause—paragraph 38 of the lease—clearly bound the plaintiff even to the extent of requiring it to pay tax increases attributable to the defendant's own benefit, i.e., the addition of two floors. The court further held that the plaintiff's payment of the tax increase brought about by the 1984/1985 assessment estopped it from challenging the increased obligation of the 1985/1986 assessment. It also held that, since the 1985/1986 tax was imposed during the term of the lease, the plaintiff was liable for its share of the increase for the 1985/1986 tax year, despite the lease's expiration on December 2, 1985.

In *Bryant Park Bldg. v Acunto* (133 Misc 225), with a similar provision for a tenant to pay a stipulated percentage of tax increases, the landlord subsequently added nine floors to the building. The court there held, apart from the practical construction of the lease given by the parties themselves, that, with the evidence being that the only cause of the increase was the nine floors addition, the tenant's obligation was based on the structure as it existed at the time of the signing of its lease. Concurring with the reasoning underlying *Bryant Park,*

we find that there are issues of fact here, precluding summary judgment, whether all or part of the increased assessment for 1985/1986 resulted from an unforeseen addition of two floors and the improvements affecting only those two floors, and to what extent, if any, the other improvements contributed to the assessment increase. *(See also, Gold Medal Stamp Co. v Carver,* 359 Mass 681, 270 NE2d 834.) In *Pacific Intermountain Express Co. v Alexander* (205 Cal App 2d 640, 23 Cal Rptr 227), relied upon by the defendant, the lease itself contemplated and referred to improvements to be made by the landlord. No such wording was in the lease here.

The lease requirement that the plaintiff pay 4½% of tax increases was determined by the plaintiff's occupying 4½% of the building, one floor out of 22. An issue therefore exists whether the enlargement of the building to 24 floors should decrease proportionately the percentage to be paid by the plaintiff. *(See,* Friedman, Commercial Real Estate Leases, at 436 [1985].)

The lease required the plaintiff's share of the tax increases be paid quarterly "on or before the first day of the respective months in which real property taxes may be paid *during the term* without interest or penalties to the City of New York" (emphasis supplied). The plaintiff argues that this language requires only that it pay its share of those tax installments coming due prior to the expiration of its lease on December 2, 1985. The cases relied upon by Special Term's holding the obligation to be that of the full tax year are inapposite since in none of them was payment limited, as here, "during the term" of the lease. The lease contemplates more than one payment of the plaintiff's share of the taxes to the defendant during any given tax year by the use of the phrases "quarterly installments" and "respective months". These phrases are in turn qualified by the phrase "may be paid during the term". Thus, since the term of the lease ended prior to the requirement for payment of the second half of the taxes, the plaintiff cannot be held liable for it.

The fact that the plaintiff paid the 1984/1985 tax increase does not of itself estop it from contesting the 1985/1986 increase. The evidence shows that, while the 1984/1985 assessment increased $2,200,000 over that of 1983/1984, it was an increase of only $760,000 over the assessment of 1982/1983. It was only in the tax year 1985/1986, after the conclusion of all the alterations and improvements and the addition of two floors that the assessment jumped from $7,000,000 to

$13,110,000. The evidence provides no reason for the plaintiff to believe other than that the 1984/1985 increase was due to general assessment increases in the city and that it was only the quantum leap in 1985/1986 that made it aware that that increase was directed specifically to its land and building.

The plaintiff's lease having expired, its motion for a preliminary injunction remains moot.

Judgment and order, Supreme Court, New York County (William McCooe, J.), entered November 14, 1985, granting the cross motion of defendant-respondent for summary judgment dismissing the complaint and denying plaintiff-appellant's motion for a preliminary injunction as moot, should be modified, on the law and the facts, to deny the cross motion for summary judgment, with costs and disbursements to the plaintiff, and otherwise affirmed.

MURPHY, P. J., CARRO, ROSENBERGER and WALLACH, JJ., concur.

Judgment, Supreme Court, New York County, entered on or about November 14, 1985, unanimously modified, on the law and the facts, to deny the cross motion for summary judgment, and otherwise affirmed. Plaintiff-appellant shall recover of defendant-respondent $75 costs and disbursements of this appeal.