OPINION OF THE COURT
David B. Saxe, J.
This controversy over tax escalation charges mirrors the movement of large advertising agencies and their offshoots from midtown Manhattan, on or near Madison Avenue, south *415 ward to lower Fifth Avenue and Park Avenue South, as a consequence of soaring commercial rents in the midtown area.
The essential facts are these: the plaintiff, Blackstar Publishing Company, Inc. (Blackstar), is a tenant at 450-460 Park Avenue South in Manhattan, as a result of a lease entered into in May 1981. Blackstar leased the entire fourth floor at 450 Park Avenue South and certain rooms at 460 Park Avenue South.
Paragraph 43 of the lease provides for a percentage pass-through of increases in real estate taxes. Specifically, the clause provides as follows: "43. Tenant agrees to pay as additional rent 8Va% of any arid all increases in real estate taxes for 1981-1982 New York City fiscal year imposed on the property with respect to every tax year or part thereof during the term of this lease, whether any such increase results from a higher tax rate or an increase in the assessed valuation of the property or both; 'Property’ shall mean the land and buildings of which the demised premises are a part and as further herein described * * * 8Vz% refers to the property at 450 Park Avenue South, while 2Va% specifies 460 Park Avenue South.”
In 1982, the defendants, 460 Park Associates, purchased the building from Hunt Lyon Stores for $9,300,000. The defendants subsequently negotiated a long-term lease agreement with Ogilvy and Mather Direct, an affiliate of the well-known advertising agency, for six floors. Not surprisingly, after this lease with this important prime tenant was entered into, the landlord of 450-460 Park Avenue South began a major construction project with respect to the six floors of the building to be occupied by Ogilvy and Mather Direct and the lobby. No additional floors were added to the building. The alterations upgraded the building by modernizing the lobby, adding central air conditioning, providing heat for the lobby, renovating the elevators, painting the floors and upgrading the electrical facilities.
In July 1985, the New York City real estate tax assessment of the property increased dramatically, as an apparent result of the renovation program — from $250,000 annually to $425,000. The percentage tax escalation increases were paid under protest by Blackstar who claimed that the parties to the lease did not intend that increases in real estate taxes attributable to major renovations to the building for uses that did not benefit Blackstar could be passed through to it. Accordingly, *416 Blackstar has brought an action for a declaratory judgment that it has no liability under the lease for tax increases attributable to the renovations and improvements made here and for restitution. It has moved for summary judgment.
The defendants contend that the escalation clause is clear and unambiguous — that the tenant must pay real estate tax escalations whether they are due to an increase in tax rate, assessed valuation or a special assessment imposed for any other purpose. Additionally, the defendants contend that the tax increases were caused not only by their renovations but rather by the increased assessed valuation of the property based on the purchase of the building for $9,300,000. The defendants have cross-moved for an order of summary judgment dismissing the complaint and declaring that the plaintiff is required to pay the demanded real estate tax escalation.
The law applicable to a resolution of the set of facts existing here is surprisingly relatively sparse. In Bryant Park Bldg. v Acunto (133 Misc 225 [NY Mun Ct 1928]), involving a lease similar to the one in this case, the court held that the tenant was not required to pay taxes assessed on account of the landlord’s unforeseen addition of nine stories. The court held: "It would certainly be distorting the intent of the parties to hold that they contracted with anything other in view than the building as it then existed.” (Supra, at 228.)
In Credit Exch. v 461 Eighth Ave. Assocs. (119 AD2d 216 [1st Dept 1986]), the landlord moved for summary judgment against the tenant based upon increased tax assessments allegedly the responsibility of the tenant under a tax increase apportionment clause in the lease. The Appellate Division, First Department, relying on the reasoning underlying Bryant Park (supra), held that there were factual issues present that precluded a grant of summary judgment: whether all or part of the increased tax assessment resulted from an unforeseen addition of two floors and improvements affecting only those two floors, and to what extent other improvements to the common areas of the premises contributed to the increase.
Finally, in Gold Medal Stamp Co. v Carver (359 Mass 681, 270 NE2d 834 [1971]), the Supreme Judicial Court of Massachusetts applied the reasoning of Bryant Park (supra) to a situation in which an increased tax assessment resulted not from the addition of more floors but, instead, from extraordinary permanent improvements to the premises. The court there held that where the building renovation amounted to an *417 extraordinary permanent improvement not contemplated by the parties at the time of lease execution, the tenant would not be liable for these assessments.
Bryant Park (supra) and Credit Exch. (supra) are distinguishable from the facts here because in those two cases, additional floors were added. This case is more akin to Gold Medal (supra) in which the court highlighted the principle that tax escalation clauses are to be construed generally in light of the condition of the premises at the time the lease was executed. (Gold Medal Stamp Co. v Carver, supra, at 837.) While this notion may conflict with standard rules of lease construction, to the effect that leases shall be construed according to their plain and literal language (Matter of Western Union Tel. Co. [American Communications Assn.] 299 NY 177), nonetheless, a construction that recognizes the condition of the premises at the time that the lease was entered into and the reasonable commercial expectations of both signatories to the lease deserves our favored attention. That is the message of Gold Medal (supra) and I find its reasoning persuasive.
The improvements and renovations that were done by the landlord here were distinct: some of the work was done only on space that Ogilvy and Mather Direct was to occupy; other improvements were performed on common areas, and certainly, with respect to the former, it would be unfair to pass along any increase in real estate taxes to the plaintiff. With respect to the latter category, although this work obviously caused a change in the premises from its state at the time Blackstar signed its lease, it cannot be said, as a matter of law, that such renovations that seem to have benefited all tenants (including Blackstar) were not reasonably foreseeable. That is why summary judgment is inappropriate here and, accordingly, the competing applications for it are denied.