*926 OPINION OF THE COURT
Paul G. Feinman, J.
In this commercial landlord-tenant nonpayment proceeding, respondent moves for summary judgment and dismissal of the petition based on allegedly improper claims for real estate tax payments for the years 2002-2003 and 2003-2004. Respondent also seeks attorney’s fees. For the reasons set forth below, the motion is granted.
Factual Background
The building at issue is located at 1152 First Avenue, New York, New York. In August 1995, petitioner’s predecessor leased the subject premises to Beerworks, LLC, respondent’s predecessor (affidavit in opposition, exhibit A).[1] On about July 2, 2000, respondent acquired the lease from Beerworks at a bankruptcy auction.
On about April 23, 2001, petitioner converted the building to a condominium consisting of two units: one a residential unit with multiple apartments, and one a commercial unit occupied by respondent (notice of motion, exhibit B, declaration of condominium). Prior to that time, the building was considered a single unit with a single landlord, and was designated as a single tax lot (block 1458, lot 1). The declaration of condominium apportioned the interests in the condominium’s common areas as 24% to the commercial unit and 76% to the residential unit. In June 2001, petitioner sold the residential unit to the Animal Medical Center, a nonprofit, tax-exempt corporation (affidavit in opposition 1Í 9). Petitioner remains the owner of the commercial unit which, based on the allocation of common areas, comprises 24% of the building. Respondent is petitioner’s tenant in this commercial unit.
At issue is article 15 of the lease, concerning real estate tax payments. According to article 15:
“Tenant agrees to pay seventy-five percent 75% of any and all increases in the real estate taxes assessed and levied against the Building and the land appurtenant thereto above the taxes paid for the year 1995-1996 (as well as any assessment^] imposed upon the Premises for any purpose whatsoever during the term), whether the increase in taxa *927 tion results from a higher tax rate or an increase in the assessed valuation of the Premises, or both. If Landlord shall obtain a reduction of the assessed valuation of the Demised Premises and or of the Building of which the Demised Premises represents a portion of, then in addition to the Tenant’s payment of real estate taxes in accordance with this paragraph, Tenant shall also pay Tenant’s prorata share of expenses in obtaining such reduction in assessed valuation, including but not limited to attorneys’, professional, and/or appraiser’s fees incurred by Landlord ...” (notice of motion, exhibit F, lease).
The base year was changed to 1996-1997 by article 50 of the lease. In addition, article 50 states:
“Anything contained in Paragraph 15 of the Lease to the contrary notwithstanding, Tenant will not be liable for any increases in real estate taxes whether arising from (a) an increase in assessed valuation or otherwise, where such increase arises from a sale of the property of which the demised property is a part (‘Property’) or other transfer of the Owner’s interest which occurs after the date hereof, or (b) any additional improvements to the Property, unless such additional improvements are constructed for the Tenant’s sole benefit (collectively ‘Sale’) or (c) a change in the current real property classification of the Property, which is 2a. It is agreed that improvements as used herein shall not include the repair, replacement or removal of any existing apartments or areas for commercial use.”
Petitioner concedes that in 1996-1997, the base year for purposes of its lease with respondent, it paid $44,740.96 in real estate taxes. It also concedes that due to the fact that it now owns only part of the building, in the 2002-2003 tax year, it paid $15,123.04 in real estate taxes, and that for the 2003-2004 year, it will pay $22,684.76 (notice of motion, exhibit E, petitioner’s responses to respondent’s notice to admit 1Í1Í 4-7). Respondent argues that because petitioner’s real estate taxes for the years 2002-2003 and 2003-2004 are less than the taxes paid in 1996-1997, it cannot be charged for any real estate taxes, given that article 15 of the lease provides that it must pay 75% of all increases in taxes above the base year assessed against the building and land appurtenant. It thus argues that the petition’s claim that it owes $32,991.16 in outstanding real estate taxes is *928 erroneous as a matter of law and requires dismissal of the petition.
Petitioner counters that article 15 of the lease was drafted with the contemplation that the building would remain a single unit owned by a single landlord. It argues that although its real estate taxes have decreased, given the conversion and sale of the property to a condominium, the assessed value of the building continues to rise, as reflected in the annual tax increases, and the intent of article 15 of the lease, the real estate escalation clause, is to pass along 75% of the increase in taxes to the tenant. It concedes that the real estate taxes charged to it for the 2002-2003 and 2003-2004 tax years were less than the taxes paid in 1996-1997, but argues that this is because the amount charged in 1996-1997 was for “a different property” than that for which the petitioner was charged in 2002-2003 and 2003-2004 (Klatsky affidavit in opposition 1111 15, 16). Petitioner argues that there must be a “reasonable and equitable” determination of the amount of real estate taxes owed by respondent which reflects the continued escalation of taxes, and compensates for the fact that petitioner is now taxed for only 24% of the space but that the space continues to escalate in value. It therefore computes the amount of real estate tax payments allegedly owed by respondent by assessing 24% of what was owed in the base year of 1996-1997 ($10,737.83), comparing that amount to the total amounts actually owed in 2002-2003 ($15,123.04) and 2003-2004 ($22,684.76), and taking 75% of the difference of each of those amounts. Thus, for 2002-2003, where the real estate taxes were $15,123.04, it subtracted the percentage from the base year of $10,737.83, and that amount, totaling $4,385.21, was assessed at 75% to total $3,288.90. Similarly, for 2003-2004, it subtracted from the total of $22,684.76, the percentage from the base year of $10,737.83, and that amount, totaling $11,946.93, was assessed at 75% which totals $8,960.20. According to petitioner, respondent thus owes $12,249.10 in real estate taxes for the years 2002-2003 and 2003-2004 (affidavit in opposition 1111 22-24). Notably, these amounts differ greatly from the total amount of $32,991.16, claimed in the petition as being owed (notice of motion, exhibit A, petition 11 6).[2]
Petitioner argues that at the time of entering into the lease, neither party contemplated that the original building, assessed *929 as one unit by the New York City Department of Taxation, would become in essence two parcels, with petitioner responsible for the taxes on the smaller portion and thus with a proportionately reduced tax burden. Petitioner contends that the real estate tax escalation clause contained in the lease must accordingly be reinterpreted to reflect these changed circumstances.
Legal Analysis
It is basic that a contract’s terms are interpreted against the drafter (<Jacobson v Sassower, 66 NY2d 991 [1985]; Calamari and Perillo, Contracts § 3-13, at 173 [3d ed], citing Restatement [Second] of Contracts § 206). It is not the role of the court to remake a bargain entered into because of mistake, nor does the Civil Court have jurisdiction to reform a lease agreement (CCA 203). Although it is correct that petitioner no longer owns the same property as it owned at the time respondent entered into its lease agreement, its argument that the lease terms should now be reinterpreted to reflect the sale of part of the building is unpersuasive.
The facts at bar differ from those in the cases relied upon by petitioner. The cases cited by petitioner addressed revaluations of the real property based on additions to the premises (Bryant Park Bldg, v Acunto, 133 Misc 225 [Mun Ct, Borough of Manhattan 1928] [summary proceeding finding tenant not responsible to pay increased taxes due to addition of nine additional floors]; Credit Exch. v 461 Eighth Ave. Assoc., 119 AD2d 216 [1st Dept 1986], affd 69 NY2d 994 [1987], rearg denied 70 NY2d 748 [1987] [denying summary judgment where addition of two floors, causing tenant to be a proportionately smaller leaseholder, resulted in question of whether tenant should pay a smaller proportion of real estate tax increases]), or concerned extensive renovations which allegedly benefitted the tenant and thereby warranted a determination as to whether the tax increase should be passed along (Blackstar Publ. Co. v 460 Park Assoc., 137 Misc 2d 414 [Sup Ct, NY County 1987]). Here, the tenant agreed to pay increases based on the year 1996-1997, when the building was solely owned by petitioner. In the intervening years, petitioner did not increase the value of the building in any manner, but instead sold the greater portion of the premises. Unlike the cases cited by petitioner, where the building owners’ actions resulted in sudden large tax obligations for which the tenants argued they were not responsible, petitioner’s action resulted in an overall decreased tax obliga *930 tion. In these circumstances, if petitioner wished to continue to pass along a portion of the reduced tax assessment, it should have caused the lease to be amended to reflect this changed circumstance. As it is, the lease continues to require respondent to pay for increases on the building and land based on the 1996-1997 tax year.
Petitioner failed to renegotiate the terms of article 15, which set forth the base year from which all tax computations are to flow, but continues to claim it is due payment for taxes. However, a landlord may not collect taxes which are not actually owed (Fairfax Co. v Whelan Drug Co., 105 AD2d 647, 648 [1st Dept 1984] [where the landlord received a tax abatement but attempted to charge its commercial tenant for taxes based on the amount of taxes that would have been due without the abatement, the Court held this to be an unwarranted “windfall”]; see also S.B.S. Assoc. v Weissman-Heller, Inc., 190 AD2d 529 [1st Dept 1993] [following Fairfax Co.]). Enforcing a tax escalation clause as written is “consistent with well-settled law that such clauses are ‘meant to provide relief for the landlord where “assessed” tax required actual payment’ ” (Ran First Assoc. v 363 E. 76th St. Corp., 297 AD2d 506, 509 [1st Dept 2002], quoting Fairfax Co. v Whelan Drug Co., supra at 648).
Here, the real estate taxes are not, in fact, higher than the base year of 1996-1997. This is so due to petitioner’s decision to sell the residential portion of the building to a nonprofit organization which brought that portion of the building off the tax roll. The effect of such a sale was wholly foreseeable by petitioner which knew of its lease terms with respondent, and now it should be held with the bargains it struck. Petitioner may not charge respondent for any of the amount. Accordingly, because the petition improperly claims real estate taxes which are not owed, respondent’s motion for summary judgment and dismissal of the summary proceeding is granted without prejudice to a new proceeding being brought for any amounts due other than real estate taxes.
Respondent, as the prevailing party, is entitled to an award of attorney’s fees in accordance with the terms of the lease. The determination of such fees is severed for determination at a hearing.
It is therefore ordered that the motion for summary judgment is granted.

. It is not clear when petitioner acquired the premises from the original owner, 1152 First Equities Group, LE

. The amount calculated for 2003-2004 also differs greatly from the revised real estate tax bill 2003-2004, dated August 4, 2003 which was sent to respondent shortly prior to the commencement of this proceeding (see reply affidavit, exhibit A).