Book Production Industries, Inc. (Consolidated Book Publishers Division), a Corporation, Plaintiff-Appellant, v. Blue Star Auto Stores, Inc., a Corporation, Defendant-Appellee.

Gen. No. 11,509.

Second District, Second Division.

December 19, 1961.

23

Matthews, Jordan, Dean & Suhler, of Aurora, and Campbell, Clithero & Fischer, of Chicago, for appellant.

Alschuler, Putnam & McWethy, of Aurora, and Arvey, Hodes & Mantynband, of Chicago, for appellee.

CROW, J.

The complaint in this case alleges that the plaintiff, Book Production Industries, Inc., as lessee, leased a building owned by the defendant Blue Star Auto Stores, Inc., for a term of five years, commencing

May 1, 1955, by written lease with rider attached, to be used for the warehousing of books and printed matter; that the plaintiff lessee agreed to pay and has paid certain total rent; that a copy of the lease and rider are attched as Exhibit A and made a part of the complaint; that the plaintiff lessee took possession pursuant to the lease; that paragraph 22 of the rider to the lease provided that the defendant lessor keep and maintain the inside downspouts in good order and repair during the term of the lease; that the defendant lessor failed to maintain and repair the inside downspouts and as a proximate result thereof a section thereof on the third floor became rusted and weakened; that on or about April 26, 1959, that section of the inside downspout broke off, causing rainwater to run onto that third floor and thence to the floors below ruining large quantities of the plaintiff's printed matter which the plaintiff lessee had stored on the ground floor, resulting in damages of $4,000; that on April 27, 1959, the plaintiff notified the defendant that water had leaked through the ceiling of the ground floor from an unknown source, damaging its property, and the defendant failed to repair the defective downspout; that on June 25 and 26, 1959, it rained again, the plaintiff suffered additional similar water damage from rainwater pouring from the defective downspout onto the third floor and thence to the ground floor, the defendant was notified again of that water damage, and the defective downspout was not repaired; that on June 30 and July 1, 1959, it again rained, water leaked through the building, and the plaintiff sustained further similar water damage to the printed matter that it had stored; that on July 1, 1959, the plaintiff's employees located the trouble, which was a broken inside downspout, which information was communicated to the defendant, and the defendant then made repairs to the downspout; that dam-

25

age to the plaintiff from the water leakage of June 25, 26, 30, and July 1, was $5200; that on July 23, 1959 additional property of the plaintiff was damaged by rainwater from another defective inside downspout on the first floor, to the extent of $1035; that in consequence of defendant's failure to perform all its obligations under the lease the plaintiff has been damaged $10,235; which the defendant refuses to pay; and the plaintiff prays for a money judgment of $10,235 and demanded a jury trial.

The copy of the printed lease attached to the complaint as Exhibit A provides, so far as pertinent:

"4. CERTAIN RIGHTS RESERVED TO LESSOR: Lessor reserves the following rights:

. . .

(d) To enter the premises at all reasonable hours for inspections, repairs, alterations or additions to the premises or the Building, . . . and for any purpose whatsoever related to the safety, protection, preservation or improvement of the premises or the Building, or Lessor's interests. . . ."

"6. WAIVER OF CERTAIN CLAIMS: Lessor shall not be liable, and Lessee waives all claims, for damage to person or property sustained by Lessee or any occupant of the Building or premises resulting from the Building or any part of it or any equipment or appurtenance becoming out of repair, or resulting from any accident in or about the Building, or resulting directly or indirectly from any act or neglect of any tenant or occupant of the Building or of any other person. This Section 6 shall apply especially, but not exclusively, to damage caused by water, snow, frost, steam, excessive heat or cold, sewage, gas, odors or noise or the bursting or

26

leaking of pipes or plumbing fixtures, and shall apply equally whether any such damage results from the act or neglect of other tenants, occupants or servants of the Building or of any other person, and whether such damage be caused or result from any thing or circumstance above mentioned or referred to, or any other thing or circumstance whether of a like nature or of a wholly different nature. If any such damage results from any act or neglect of Lessee, Lessor may, at Lessor's option, repair such damage, whether caused to the Building or to tenants thereof, and Lessee shall thereupon pay to Lessor the total cost of such repairs and damages both to the building and to the tenants thereof. All personal property belonging to Lessee or any occupant of the premises that is in the Building or the premises shall be there at the risk of Lessee or such other person only, and Lessor shall not be liable for any damage thereto or the theft or misappropriation thereof."

"21. MISCELLANEOUS: . . .

(i) . . . all riders attached to this lease and signed by Lessor and Lessee are hereby made a part of this lease as though inserted in this section 21."

"A rider consisting of three pages containing sections 22 to 34, inclusive, is hereto attached and made a part hereof."

The copy of the three page typewritten rider entitled "Rider attached to and made part of Lease dated . . . etc.," which is a part of Exhibit A attached to the complaint, provides, so far as pertinent:

"22. Lessor shall at its own cost and expense keep and maintain the exterior of the demised

27

premises, including roof, skylights, fire-escape, sewers and inside down spouts in good order and repair during the term of this lease."

"27. Lessee covenants and agrees that it will protect and save and keep the Lessor forever harmless and indemnified against and from any penalty or damage or charges imposed for any violation of any laws or ordinances, whether occasioned by the neglect of Lessee or those holding under Lessee, and that Lessee will at all times protect, indemnify and save and keep harmless the Lessor against and from any and all loss, cost, damage or expense, arising out of or from any accident or other occurrence on or about said premises, causing injury to any person or property whomsoever or whatsoever and will protect, indemnify and save and keep harmless the Lessor against and from any and all claims and against and from any and all loss, cost, damage or expense arising out of any failure of Lessee in any respect to comply with and perform all the requirements and provisions hereof."

The foregoing provisions of the printed lease and accompanying typewritten rider include the only provisions urged by either party here as having a bearing on the present case.

The defendant lessor filed a motion to dismiss alleging that (1) the complaint fails to state a cause of action; (2) paragraph 6 of the lease demonstrates that the defendant is not liable for the plaintiff's damage and the complaint is insufficient in law; and (3) paragraphs 7, 9 and 10 of the complaint demonstrate that the defendant was never notified of the defective downspout prior to the plaintiff's damage, and when the defendant was notified, repairs were made. At a hearing on this motion the Trial Court entered an

order finding that the exculpatory clause in the lease, paragraph 6, relieved the defendant lessor of any liability for damages to the plaintiff lessee's property, that paragraph 22 is not inconsistent with paragraph 6, nor is there any ambiguity, granted the defendant's motion to dismiss, and dismissed the complaint and suit. This appeal is taken by the plaintiff from that final order of dismissal.

The plaintiff's theory is that the exculpatory clause of the printed lease, paragraph 6, and the defendant lessor's covenant to maintain and repair the inside downspouts of the typewritten rider, paragraph 22, are inconsistent, and that the exculpatory clause, paragraph 6, did not, as a matter of law, exonerate the defendant from liability for money damages to the plaintiff's personal property resulting from the defendant's alleged breach of the covenant to maintain and repair the inside downspouts, paragraph 22. The plaintiff argues that the exculpatory clause and the covenant to repair are inconsistent as the former purports to exonerate the defendant from liability and the latter imposes an obligation which, if breached, entitled the plaintiff to compensation for damages to its personal property resulting from the breach. The plaintiff has never contended that the exculpatory clause is invalid but rather that the covenant to repair imposed an affirmative duty on the defendant, a breach of which in effect superseded the exculpatory clause. The plaintiff makes no claim that there is any ambiguity in the language of those individual clauses of the lease when they are read separately, but insists that there is a conflict and uncertainty as to the meaning and effect to be given those clauses when taken together.

The defendant's theory is that under the exculpatory clause, paragraph 6, the plaintiff waived all claims for damage to its personal property, that there is no con-

29

flict between the exculpatory clause and the defendant's covenant to repair the inside downspouts, paragraph 22, and that effect must be given to all of the terms of the lease; and, further, that even in the absence of an exculpatory clause, the defendant would not be liable, because (1) a landlord is not in default under a covenant to repair until notice of the defect is given to the landlord; and (2) a tenant assumes the risk of injury to his person and property in leased premises under the tenant's control, even though the lessor covenants to repair.

Neither party has referred to any applicable statute relating to exculpatory covenants, and, under the circumstances, for the purposes of this case, it is to be assumed that there is no such statute applicable here.

Many of the principles applicable to the instant case are set forth in 24 Ill Law and Practice, pp 285, 286, 287, 289, 290, 296, 462, 468, 499, and 505.

 The rules applicable to the construction of other contracts are applicable to the construction of leases: Valentin v. D. G. Swanson & Co. (1960) 25 Ill App2d 285, 167 NE2d 14. Where the language used in a lease has a definite and precise meaning there is no need for interpretation. The instrument then speaks for itself and the parties are held to mean what they have clearly stated in the writing. A lease should be construed from within the four corners thereof and the Court may not add to, or detract from the instrument. A clause inserted in a lease in typewriting should prevail over a printed clause if they are in conflict, but the rule that effect must be given, if possible, to all of the terms of a lease applies to a lease which is partly typewritten and partly printed, and neither the printed portion nor the typewritten portion should be disregarded unless there is a confict between the two: Cf. Lurie v. Rock Falls Mfg. Co. (1925) 237 Ill App 334; Papulias v. Wirtz (1947) 331 Ill App

376, 73 NE2d 122; Soucy v. Louis Obert Brewing Co. (1913) 180 Ill App 69; cf. Warner Const. Co. v. The Com'rs of Lincoln Park (1934) 278 Ill App 42; cf. American Express Co. v. Pinckney (1862) 29 Ill 392. The intention of the parties should be ascertained from the language in the lease, and the words used should be given their common and generally accepted meaning. There is no necessity for resort to extrinsic facts or circumstances in order to determine the intent of the parties in executing a lease where such intent is clearly ascertainable from the lease itself. Where there is any doubt or uncertainty as to the meaning of the language used in a lease it should be construed most strongly against the lessor and in favor of the lessee: South Parkway Bldg. Corp. v. South Center Department Store, Inc. (1958) 19 Ill App2d 14, 153 NE2d 241; Moss v. Hunding et al. (1960) 27 Ill App2d 189, 169 NE2d 396. But that rule does not apply where the language used is plain and certain and contains no ambiguities. Leases should be construed as a whole. Every part should be construed with reference to all the other portions thereof so that each part may stand, if possible, and no part should be disregarded as superfluous. The lessor is bound to perform his part of the terms, covenants, or conditions of the lease and ordinarily is liable to the lessee for a breach thereof. On the breach on the part of the lessor of the terms or conditions of a lease, a cause of action arises in favor of the lessee for the damages sustained by him by reason of such breach: Watson et al. v. Hooton (1879) 4 Ill App 294; Campbell v. Banks (1930) 257 Ill App 354. A landlord and tenant may by express covenant or agreement regulate their respective duties of repair. On breach of the landlord's covenant to repair, the tenant may abandon the premises if they become untenantable by reason thereof, or may remain and recoup his dam-

31

ages in an action for rent or by payment of less rent, or in a proper case he may make repairs and deduct the cost from the rent or sue the landlord for their cost, or may sue the landlord for damages and the damages in that instance are usually the difference between the rental value of the premises in repair and out of repair: Oppenheimer v. Szulerecki (1921) 297 Ill 81, 130 NE 325. Agreements exempting a landlord of business or residential property from liability for damages are not void as against public policy, in the absence of a statute to a different effect: Jackson v. First Nat. Bank of Lake Forest et al. (1953) 415 Ill 453, 114 NE2d 721; O'Callaghan v. Waller & Beckwith Realty Co. (1958) 15 Ill2d 436, 155 NE2d 545. Generally the validity of an exculpatory clause in a lease providing that the landlord shall not be liable for damage to the property of the tenant has been upheld, in the absence of a statute to the contrary. An exculpatory clause will be strictly construed, if there is anything in its language or the facts and circumstances of the particular case requiring construction: Moss v. Hunding et al. (1960) 27 Ill App2d 189, 169 NE2d 396; Valentin v. D. G. Swanson & Co. (1960) 25 Ill App2d 285, 167 NE2d 14.

The only Illinois cases cited by the plaintiff in support of its view that the exculpatory clause of this lease, paragraph 6, and the lessor's covenant to repair the inside downspouts, paragraph 22, are inconsistent are Watson et al. v. Hooton (1879) 4 Ill App 294 and Campbell v. Banks (1930) 257 Ill App 354. We have previously referred to them. Both involved covenants by the lessor, express in the Watson case, and implied in the Campbell case, to repair the roof of a business building, and the damages suffered by the tenant to his property by reason of breaches of the lessor's covenant and resulting rainwater leakage. But neither

case involved an exculpatory clause in the lease and, necessarily, neither case holds an exculpatory clause and a lessor's covenant to repair to be inconsistent.

In Jackson v. First Nat. Bank of Lake Forest et al. (1953) 415 Ill 453, 114 NE2d 721 and O'Callaghan v. Waller etc. Co. (1959) 15 Ill2d 436, 155 NE2d 545, previously referred to, upholding the validity (in the absence of a contrary statute) of an exculpatory clause, though it does not specifically appear from the opinions, it seems reasonable to assume that there must have been covenants, in both cases, express, or implied under the circumstances, by the lessor, to repair the particular parts of the premises concerned, but in neither case did the Court seem to consider there was any inconsistency between the exculpatory clause as to money damages to the tenant and the lessor's covenant to repair, or that there was even any real problem or question in that respect.

And in Hyman et al. v. 230 So. Franklin Corp., et al. (1955) 7 Ill App2d 15, 128 NE2d 629,—an even stronger case for placing possible liability on the lessor than the present case, since there only a part of certain business premises were leased to the plaintiffs tenants rather than the whole business building, as in the present case,—an exculpatory clause as to money damages was held to bar a recovery by the plaintiffs tenants of any money damages to their property resulting from rainwater leakage through an alleged defective roof and other appurtenances. There too, though it does not specifically appear from the opinion, it seems reasonable to assume that there must have been a covenant, probably implied under the circumstances, by the lessor to repair the parts of the premises concerned, but again it does not appear to have been considered that there was any inconsistency between the exculpatory clause as to money damages and the lessor's covenant to repair.

33

In Jersey Silk and Lace Stores, Inc. v. Best Silk Shops, Ltd., et al. (1929) City Court of N. Y., 134 Misc Rep 315, 235 NYS 277, the only other closely analogous case cited by either party, the plaintiff tenant of an entire building sued its defendant lessor for damages to its personal property,—silk,—from rain leaking through the roof. There was a covenant exempting the landlord from liability for leakage. The lease also required the tenant to make all repairs "excluding the roof," which the Court said "casts the duty of making repairs to the roof upon the landlord." The Court set aside a verdict for the plaintiff tenant for damages to its silk, ordered a new trial, and said, p 281:

"While one clause of the lease impliedly obligates the landlord to repair the roof, another clause in the same lease saves him from liability for damage from leakage. We cannot change the contract as made by the parties. And since the only theory upon which the landlord can be held is breach of covenant to repair, and the very covenant exempts the landlord from liability for the precise cause of the damage, it follows that plaintiff has no cause for action for damage to the silk by leakage of water. The clause exempting defendant from damage for leakage will not deprive plaintiff from recovering the difference between the rental value of the premises with the covenant broken and the rent agreed to be paid, nor of the reasonable cost of repairing the roof if the tenant had made the repairs."

Under the exculpatory clause in the instant lease, printed paragraph 6, "Lessor shall not be liable, and Lessee waives all claims, for damage to . . . property sustained by Lessee . . . resulting from the Building or any part of it or any equipment or appurtenance

34

becoming out of repair, . . . or resulting directly or indirectly from any act or neglect . . . of any other person. This Section 6 shall apply especially, but not exclusively, to damage caused by water, . . . and shall apply equally whether any such damage results from the act or neglect . . . of any other person, and whether such damage be caused or result from any thing or circumstance above mentioned or referred to, or any other thing or circumstance . . . All personal property belonging to Lessee . . . that is in the Building or the premises shall be there at the risk of Lessee . . . only, and Lessor shall not be liable for any damage thereto . . . ."

Under the lessor's covenant to repair, typewritten paragraph 22,—"Lessor shall at its own cost and expense keep and maintain the . . . inside down spouts in good order and repair . . ."

 So far as their application to this case is concerned, we think those paragraphs have a definite and precise meaning and there is no need for interpretation. The instrument speaks for itself and the parties must be held to have meant what they stated. We cannot add to or detract from that language. There is no conflict between paragraph 6 and paragraph 22. That one is printed and the other typewritten is immaterial here. Effect must be given to all the terms, and neither paragraph may be disregarded. The parties' intent is ascertainable from the lease itself. There is no necessity for resort to extrinsic facts or circumstances. The language is plain and certain and contains no ambiguities, and there is no occasion to apply the rule of construing the language most strongly against the lessor. Each paragraph should be construed with reference to the other so that each may stand, if possible, and no part should be disregarded as superfluous.

By paragraph 22, the lessor's covenant to repair, the lessor and lessee have by express covenant or agreement regulated and provided for their respective duties of repair, so far as material here, and have placed the duty on the lessor, as they may properly do. They do not, however, provide in that paragraph what the lessee's remedies shall be on breach by the lessor of that covenant. In the absence of a particular provision as to the lessee's remedies upon such breach by the lessor, the lessee normally may pursue one or more of several possible courses of procedure, and normally may have one or more of several possible remedies, including, among others, a cause of action for the money damages sustained by the lessee by reason of such breach, which may possibly include money damages suffered to the lessee's personal property,—in any event it may be assumed for the present that money damages of that nature would properly be included in such a cause of action.

By paragraph 6, the exculpatory clause, however, the lessor and lessee have also provided that the lessor shall not be liable, and the lessee waives all claims for damage to property sustained by the lessee resulting from the building or any part, equipment, or appurtenance becoming out of repair or resulting from any act or neglect, specifically as to damage caused by water, and that the lessee's personal property in the building shall be there at the risk of the lessee, and the lessor shall not be liable for any damage thereto. Paragraph 6 does not change the fundamental, basic, substantive provisions of paragraph 22 as to the lessor's covenant to repair and the lessor's duty to repair. Paragraph 6 simply means what it says,—and is limited to what it says,—that, so far as applicable here, the lessor shall not be liable, and the lessee waives all claims for money damages, if any, to the lessee's personal property resulting because of water

36

from some part of the building becoming out of repair (by breach of the lessor's covenant to repair) or from any act or neglect (of the lessor) and that the lessee's personal property is there at its risk and the lessor is not liable for money damages thereto. In other words, one of the possible remedies or courses of procedure of the lessee upon breach by the lessor of the lessor's covenant to repair, paragraph 22, namely, a possible cause of action for the money damages to the lessee's personal property has been forbidden, waived, and released by the exculpatory clause, paragraph 6. But paragraph 6 does not deal with any other possible course of procedure or possible remedy which may possibly be available to the lessee upon such breach by the lessor of paragraph 22. The exculpatory clause here is not amenable to the strict construction against the lessor to which such clauses are frequently subjected. It is not void as against public policy, in the absence of an applicable statute to a different effect. It must be given effect. Paragraph 22 must also be given effect. And we perceive no reason why they both may not stand.

The complaint here being for a money judgment on an alleged cause of action for money damages to the plaintiff lessee's personal property, the order dismissing the complaint and suit is, under the circumstances, correct and should be and is affirmed. In our view it is not necessary to discuss other matters referred to in the briefs.

Affirmed.

SPIVEY, P. J. and WRIGHT, J., concur.