Gold Medal Stamp Co., Inc. *vs.* Florence E. Carver
& others.

Norfolk. March 5, 1971. — June 18, 1971.

Present: Tauro, C.J., Spalding, Spiegel, Reardon, & Braucher, JJ.

*Landlord and Tenant,* Covenant to pay taxes.

In a suit in equity by the lessee in a long term lease of a store and basement
in a building containing other stores and offices for a declaratory decree
respecting its covenant to pay to the lessor annually "35% of any in-
crease in real estate taxes above the taxes for the year . . . [of execution
of the lease] for the real estate of which the demised premises form a
part," where it appeared that in the ensuing years the assessment on
the land remained constant but that the tax rate of the city and the
assessment on the building rose, that the lessee spent a small amount in
improving the demised premises only but that the lessor spent a huge
amount in improving and modernizing the rest of the building, and that
there were many more tenancies in the building than when the lease
was executed, it was held that the judge rightly ruled "that the renova-
tion of the building by the . . . [lessor] was an extraordinary permanent
improvement not contemplated by the parties at the time said lease
was executed," that such renovation "resulted in . . . [the] increase of
taxes assessed on the real estate," and that the lessee was liable only
for 35% of the increased taxes "on the basis of the structure which
existed at the time of the execution of said lease."

Bill in equity filed in the Superior Court on November 8,
1967.

The suit was heard by *Ponte,* J.

*Mack M. Roberts* for the defendants.

*Norman Ostroff* for the plaintiff.

Reardon, J. This bill for declaratory relief presents
us with a question of first impression. The defendant
Florence E. Carver, the plaintiff's lessor (lessor), and the

defendants Evelyn P. O'Connell and Mahony & Co., Inc. (who claim ownership of the property) have appealed the final decree of the trial judge declaring the plaintiff not liable under the terms of the lease between the plaintiff and the lessor for certain increases in real estate taxes during the term of the lease. The record before us includes the transcript of the hearing before the trial judge, as well as his findings, rulings and order.

The facts of the case are set forth below in the detail we feel necessary to an understanding of the disposition we have reached. On March 19, 1962, the plaintiff and the lessor entered into a five year lease of a store and basement located at 1358–1366 Hancock Street in Quincy, with an option to renew for an additional five years. Rent was fixed at $6,000 for the first three years commencing May 1, 1962, and at $7,000 for the next two years. The plaintiff subsequently exercised the option to renew at the rental of $7,500 fixed in the lease for the renewal period. The lease also contained a provision that "[i]n addition to the rent as hereinafter provided, the lessee agrees to pay to the lessor on October 1 of each year, beginning October 1, 1963, 35% of any increase in real estate taxes above the taxes for the year 1962 for the real estate of which the demised premises form a part."

In the intervening years to 1970 the tax rate in Quincy per $1,000 has risen from $77.30 to $116.40, as shown in the table in the margin.[1] The assessment of the land in the same period has remained constant at $97,500, but the assessment of the building of which the demised premises form a part has risen from $27,500 to $62,500 according to

[1]

| Year | Tax Rate per $1,000 |
| --- | --- |
| 1962 | $ 77.30 |
| 1963 | $ 79.50 |
| 1964 | $ 83.50 |
| 1965 | $ 89.20 |
| 1966 | $ 88.20 |
| 1967 | $ 93.10 |
| 1968 | $ 98.90 |
| 1969 | $116.40 |

the pattern set forth below.[2]  The building, which contains four other stores on the ground floor and two stories of offices above, has been considerably renovated.  In 1962 the plaintiff spent $8,500 to $10,000 improving that part of the premises leased to it.  There was evidence, which the trial judge adopted as a finding of fact, that these were the only improvements made by the plaintiff.  In addition, however, from about March or April, 1964, through March or April, 1965, the lessor spent a total of $247,954.94 improving and modernizing the rest of the building.  The front vestibule was rebuilt, a new staircase of simulated marble leading to the fourth floor was installed, as well as an electric elevator to the third floor, and the second and third floor offices were redesigned and renovated.  The overall result has been, in the words of the chairman of the Quincy board of assessors, to change the building from "an old, . . . obsolete sort of building" to "a fairly modern and nice type office building."  In addition, the building now generates considerably more income.  In 1962, there were only four or five tenants on the second floor and none on the third floor; as of 1969 there were thirteen tenants on the second floor and fourteen on the third.

Through the year 1968 the plaintiff paid to the defendants under protest thirty-five per cent of the increase in real estate taxes occasioned by the rise in tax rate and the increased building assessment.  For the year 1969 the plaintiff paid only its proportionate part of the tax increase attributable to the 1962 land and building assessment.  The plaintiff contends that under the tax clause of the lease it is not liable for increased real estate taxes attributable to

[2]

| Year | Assessment |
|------|------------|
| 1962 | $27,500 |
| 1963 | $30,500 |
| 1964 | $30,500 |
| 1965 | $40,500 |
| 1966 | $52,500 |
| 1967 | $62,500 |
| 1968 | $62,500 |
| 1969 | $62,500 |

improvements made by the landlord to other parts of the building which have in no way benefited it. The defendants have taken the position that the language of the tax clause is clear and unambiguous and includes all increases in real estate taxes no matter what their source. They further contest the plaintiff's claim that the improvements made by the lessor were the sole cause of the increase in building assessments since 1962 and that these improvements did not benefit the plaintiff. The parties have stipulated that if the plaintiff's position is correct it is entitled to a rebate of $3,742.57 from the beginning of the lease through 1969, and that for the rest of the term it is liable for tax increases based only on the 1962 assessment figures. If the defendants are correct, they are entitled to $1,462.25 through 1969 and continued payments based on thirty-five per cent of the total increase in real estate taxes over the 1962 taxes.

On these facts the judge found, and we agree, that an actual controversy exists between the parties such as to make the exercise of declaratory relief appropriate. On the merits of the case he held "that the renovation of the building by the . . . [lessor] was an extraordinary permanent improvement not contemplated by the parties at the time said lease was executed. This resulted in said increase of taxes assessed on the real estate of which . . . [the plaintiff's] demised premises formed a part." Accordingly, he ruled that the plaintiff was liable for thirty-five per cent of taxes above those of 1962 only "on the basis of the structure which existed at the time of the execution of said lease." Our reading of the transcript, for the completeness of which we are indebted to the judge who went to some pains to facilitate our judgment on appeal, and of the few cases on this point, leads us to agree with him.

On the evidence it was open to the judge to find that the parties contemplated "no extraordinary improvement" when they executed the lease. It could be argued that this finding has support in the action of the plaintiff in itself engaging in substantial renovation at its expense of the property leased.

We are quite aware of the cases cited by the defendants to the effect that parties to a contract are bound by its plain and unequivocal terms.   However, to follow the defendants logically would be to hold the tenant liable for additional taxes by reason of the very costly additions and renovations to the building it occupied no matter what sums of money were required to complete them.   We cannot so read the disputed clause, particularly in the face of the judge's findings.   We are also of the belief that the typical tax escalation clause is to be construed generally in the light of the condition of the premises as the tenants occupied them.     Compare *Welch* v. *Phillips*, 224 Mass. 267, where an act of the government rather than the unilateral act of the lessor created an additional tax burden for the lessee.   We prefer to rely upon the reasoning contained in *Bryant Park Bldg. Inc.* v. *Acunto*, 133 Misc. (N. Y.) 225. In that case the tax clause involved was substantially the same as the one before us.   While there was no evidence as to the condition of the building at the outset, it was undisputed that during the leased term the lessor added nine stories to the building resulting in an increase of the building assessment from $500,000 to $2,000,000, for a period during which the tax rate declined slightly.   Taxes on the building rose from some $12,000 to over $54,000 annually by reason of the improvements.   While in the instant case the tax bill for both land and building, which included steady rises in the tax rate, was almost doubled from $9,662.50 to $18,624 in 1969, the *Bryant Park* case serves to illustrate the difficulties which might ensue were we to hold the tenant liable in the circumstances of this case.   The court in the *Bryant Park* case, with only slightly different basic facts, referred to the genesis of the extra assessment on the building of $1,500,000 as the increase in its height by the addition of nine stories.   With reference to the intent of the parties as they entered the lease, the court stated that it would be a distortion "to hold that they contracted with anything other in view than the building as it then existed."   P. 228.   We are impelled to agree with the reason-

ing in the *Bryant Park* case.   See *President & Fellows of Harvard College* v. *Aldermen of Boston*, 104 Mass. 470, 483. It follows that the judge was correct.

*Decree affirmed with costs of appeal.*