DESIGN STUDIO INTERNATIONAL, INC., Plaintiff-Appellee, v. CHICAGO TITLE & TRUST COMPANY, as Trustee, Defendant-Appellant.

First District (1st Division)   No. 1—87—0915

Opinion filed June 26, 1989.

Irwin I. Zatz, George L. Grumley, and A. Marcy Newman, all of Arvey, Hodes, Costello & Burman, of Chicago, for appellant.

Jerome Wiener and Joanne A. Sarasin, both of Antonow & Fink, of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:
This is an appeal from a declaratory judgment entered in favor of plaintiff, Design Studio International, Inc. (Design Studio). The trial court held that Design Studio's obligation under its lease to pay a portion of any real estate tax increases paid by its lessor, Helene Curtis, should be based on the building as it existed prior to the improvements made by Helene Curtis. We affirm.

On February 16, 1979, plaintiff, Design Studio, executed a lease and rider with L.I.R. Associates, as agents for Michigan Avenue National Bank, as trustee under trust No. 1158.

The lease was for a term of five years from June 1, 1979, through May 31, 1984, and covered a store and basement premises in what was then known as the Exhibitors Building at 331-35 North Wells Street, Chicago, Illinois. The building was a 70-year-old, nine-story brick building with a small lobby housing some 30 to 40 tenants who exhibited home furnishings for sale to retailers or the public.

Howard Galler (Galler), the president of Design Studio, negotiated the lease directly with Daniel Comroe (Comroe), the then owner of the Exhibitors Building. The provisions of the lease which were the subject of this declaratory judgment action are paragraphs 23(A) and 24(A) of the rider. Paragraph 23(A) provided:

"Lessee agrees to pay as additional rental hereafter for each calendar year succeeding 1978, the 'base year,' during the remainder of the term, including any extensions or renewals thereof, a portion of any increase in the real estate taxes paid

by lessor during the 'base year.' Said proportion shall be such fraction as the number of square feet of rental space of the leased premises bears to the total rental space in the said building.

Said additional rental shall be payable in a lump sum on the first day of June of each calendar year for which the additional rent is payable, but only after Lessor renders a Statement to Lessee thereof.''

Paragraph 24(A) provided:

"2. 'Building Area' in Building means all of the office and store area.

3. 'Occupancy Factor' is 5% (.05) which is the ratio of the premises to the total Building area in the Building.''

In October of 1981, Helene Curtis purchased the property in which Design Studio's premises were located for about $2 million. Title was taken by Helene Curtis in the name of Chicago Title & Trust Company, as trustee under trust No. 41080664. Helene Curtis terminated the leases of every tenant in the Exhibitors Building with the exception of Design Studio, which could not be terminated because of the renewal provisions in its lease.

Between 1982 and 1984, Helene Curtis spent approximately $20 million renovating the building which it renamed the Helene Curtis Building. The building was gutted and two new floors were added. The building was rewired, and new plumbing, heating, air-conditioning, ventilation and windows were installed. The building is now used exclusively by Helene Curtis with the exception of the portion leased by Design Studio. The area leased by Design Studio was left essentially unchanged except for some work on the heating and sprinkler systems. Defendant does not dispute that Design Studio has no access to, nor is it allowed to make any use of, the new building.

In 1982, the Exhibitors Building had an assessed value of $631,975, real estate taxes were $81,977.79, and Design Studio's proportionate share of the real estate tax was $2,133. Design Studio paid its tax bill for 1981, 1982 and 1983 based on the above assessed value. In 1984, Helene Curtis received the first real estate tax bill based on the value of the new building as determined by the quadrennial reassessment. The assessed value of the property after renovation was $2,605,692 and real estate taxes were $488,309.82. Helene Curtis subsequently sent Design Studio a bill for $20,958.48.

Design Studio refused to pay the bill but responded that pursuant to its lease, it would pay the amount of taxes it owed based upon the Exhibitors Building. Thereafter, in February of 1986, Helene Curtis

served Design Studio with a five-day notice for nonpayment of rent.

Design Studio filed a declaratory judgment action and a temporary restraining order. On February 24, 1987, a declaratory judgment was entered in favor of Design Studio and defendant now brings this appeal.

Defendant contends that the trial court's order of February 24, 1987, finding that Design Studio's obligation to pay a portion of the real estate taxes paid by Helene Curtis should be based on the condition of the property as it existed prior to the improvements was an abuse of discretion and contrary to the manifest weight of the evidence. Defendant notes that Galler, plaintiff's principal representative, had sophisticated knowledge of real estate matters, which was evidenced by Galler and his counsel's decision to strike certain portions of the lease and to insert language protecting his own interests. Defendant points out that plaintiff did not revise or delete certain portions of the lease reserving the lessor's right to make any alterations or additions to the building. Nor did he strike or amend paragraph 23(A), which provided for a payment of additional rental fees based upon the increase in real estate taxes paid by the lessor. Defendant's principal assertion is that the terms of the lease were unambiguous and thus there was no need for the trial court to rely on extrinsic and parole evidence in construing the lease.

Defendant argues that the unambiguous lease provisions setting out Design Studio's obligation to pay real estate taxes could not become retroactively ambiguous by reason of the improvements to the building by Helene Curtis between 1982 and 1984. Defendant maintains that the lease clearly foresaw a sale of the building and major remodeling or improvements by a new owner. Furthermore, defendant points out that Design Studio exercised an option to extend the lease in June 1984 at a time when the improvements to the building were near completion and Design Studio had knowledge of them. Defendant maintains that if the parties to the lease had intended to limit Design Studio's tax payment obligations to the condition of the building as it existed at the time the lease was made, the lease would have so stated.

Defendant relies on *Bradley v. S.S. Kresge Co.* (7th Cir. 1954), 214 F.2d 692. In *Bradley*, the passage of the Butler Law in Illinois caused an unusual real estate tax increase. The court held the tenant liable for the increased real estate taxes on the basis that the provision in the lease for the payment of real estate taxes was not ambiguous and therefore the lease had to be construed from the language used in the instrument itself. *Bradley*, 214 F.2d at 694-95.

■ The rules for construing a lease are the same as those for construing a contract. (*Book Production Industries, Inc. v. Blue Star Auto Stores, Inc.* (1961), 33 Ill. App. 2d 22, 178 N.E.2d 881.) Where the language used in a lease is definite and precise, the instrument speaks for itself and there is no need for interpretation. (*Book Production Industries*, 33 Ill. App. 2d at 30-31.) Where there is any doubt or uncertainty as to the language used in a lease, it should be construed most strongly against the lessor. (*American National Bank & Trust Co. v. Lembessis* (1969), 116 Ill. App. 2d 5, 11, 253 N.E.2d 126.) However, a trial court may look to extrinsic evidence provisionally to determine whether the contract does contain an ambiguity. (*Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 229, 359 N.E.2d 745.) If the court thereafter determines that no ambiguity exists, extrinsic evidence is not admissible, but if the court determines that there is ambiguity, then extrinsic evidence may be used to show the intent of the parties. *Sunstream Jet Express, Inc. v. International Air Service Co.* (7th Cir. 1984), 734 F.2d 1258, 1268.

■ The trial court reviewed the lease which, even after the renovations, refers to the Exhibitors Building, the tenant's space as 331-35 North Wells Street and an occupancy factor based on the fraction of the number of square feet of rental space to the total rental space in the building. In light of the fact that the evidence showed that the Exhibitors Building no longer exists, the tenant's space is not at the above address and there is no longer total rental space in the building, the trial court found that the lease was ambiguous.

Defendant's reliance on *Bradley v. S.S. Kresge Co.* (7th Cir. 1954), 214 F.2d 692, is unwarranted. In *Bradley*, the court held that increases in real estate taxes resulting from a new tax law could be levied against the tenant under a tax escalation clause. There had been no change in circumstances which might have made the terms of the lease ambiguous. There was simply an increase in the tax rates caused by unilateral government action, precisely the circumstances a tax escalation clause is intended to cover.

The circumstances here are more analagous to those in *Gold Medal Stamp Co. v. Carver* (1971), 359 Mass. 681, 270 N.E.2d 834. The lessee in *Gold Medal Stamp* had agreed that "[i]n addition to the rent as hereinafter provided, the lessee agrees to pay to the lessor *** 35% of *any* increase in real estate taxes above the taxes for the year 1962." (Emphasis added.) (359 Mass. at 682, 270 N.E.2d at 835.) After the lease was entered into, but before the tenant exercised his option to renew, the landlord spent approximately $247,954.94 to renovate the property. Based on the changes in the factual circum-

stances, the trial court found the lease ambiguous and refused to be bound by the landlord's claim that the lessee was obligated to pay the cost of the tax increases irrespective of the cause. (*Gold Medal Stamp*, 359 Mass. at 684, 270 N.E.2d at 836.) The appellate court affirmed, concluding that the renovation by the landlord constituted an extraordinary improvement that was not within the contemplation of the parties at the time the lease was entered into, and therefore the tax escalation clause should be interpreted based upon the condition of the property when the lease was originally executed. (*Gold Medal Stamp*, 359 Mass. at 684, 270 N.E.2d at 836.) Helene Curtis appears to concede to some extent that the changes it made in the property required that the original lease language be construed in light of those changes. This is reflected in defendant's decision to reduce the 1984 tax bill to reflect the fact that the 5% occupancy factor was no longer applicable in the Helene Curtis Building. This action on the part of Helene Curtis in conjunction with the language in the lease that allows the landlord to make improvements at its own expense, raises a sufficient ambiguity to support the trial court's decision to consider the intention of the parties.

Having found the lease provisions to be ambiguous, the trial court admitted evidence as to the intention of the parties in order to explain the terms of the lease. Defendant now contends that the trial court abused its discretion in making findings 4, 7, 9, 12, 13, 14, 15, 16, 17 and 18 in its February 24, 1987, order.

Finding 4 stated: "That the Lease and Rider provided that Design Studio pay a portion of increased real estate taxes on the property as improved with the Exhibitors Building ***." Defendant contends that this finding is not supported by any competent evidence and that it is contrary to paragraph 23(A) of the lease, which provides:

"Lessee agrees to pay as additional rental hereunder for each calendar year succeeding 1978, the 'base year' during the remainder of the term, *** a proportion of any increase in the real estate taxes paid by Lessor during the 'base year' ***."

Defendant contends that Design Studio knew that under paragraphs 4 and 12 of the lease, Helene Curtis had the right to change the name and address of the building and to make any changes in the building, including changes to the premises leased to Design Studio, and therefore finding 4 is inconsistent with the language and intent of the lease.

■ Although paragraphs 23(A) and 24(A) of the lease provided that Design Studio pay a portion of the increase in real estate taxes over the "base year" of 1975, the portion was clearly specified as 5%,

which was Design Studio's proportion of rental space to the total rental space in the Exhibitors Building. The record indicates that neither party to the original lease intended the tax escalation clause to apply to an essentially new building. Howard Galler testified that it was his understanding that the tax escalation clause was to apply to normal real estate tax increases as they ensued and as the building stood in 1978. Mr. Comroe, the landlord who initially executed the lease, testified that he intended the tax escalation clause only as a guard against inflation. The testimony of Galler and Comroe was consistent and supports the trial court's finding that the parties to the lease intended that any increased real estate taxes would be based on the property as improved with the Exhibitors Building.

■ Finding 7 stated: "That in 1983 and 1984, Helene Curtis spent approximately $20,000,000 to gut the Exhibitors Building and to construct extraordinary capital improvements which amount to a new building." Defendant contends that the improvements made between 1982 and 1984 were not extraordinary, were not unforeseen by Design Studio and did not result in a new building. Defendant points out that on June 1, 1984, Design Studio exercised an option to extend its lease at a time when the Helene Curtis improvements were essentially completed and it must have been obvious to Design Studio that it would incur real estate tax increases due to these improvements. Further, defendant contends that the $20 million did not represent the expenditures for capital improvements and did not increase the tax valuation by that amount.

In response, Design Studio points out that Helene Curtis stipulated that $20 million was spent in making capital improvements. Thus the finding, which did not hold that the improvements were worth $20 million, is not inconsistent with the stipulation. Design Studio also notes that the original building on the property was a nine-story stone building at 331-335 North Wells housing more than 30 tenants. That building was completely gutted and replaced by an 11-story building of stone and glass. We therefore conclude that there was sufficient evidence to support the court's finding that the changes to the Exhibitors Building were extraordinary and in effect constituted a new building.

■ Defendant also contends that finding 9 is contrary to the manifest weight of the evidence. Finding 9 states: "That the aforesaid capital improvements were for the benefit of Helene Curtis and its affiliates *** and not for the benefit of Design Studio." Defendant maintains that while Helene Curtis benefitted, Design Studio benefitted as well. Defendant argues that plumbing and electrical work as

well as certain exterior improvements were made which improve Design Studio's premises. Defendant also notes that Design Studio's liability for the payment of real estate taxes under paragraph 23(A) was not dependent on whether Design Studio benefitted from the real estate improvements.

Contrary to defendant's assertions, we conclude that this finding is not against the manifest weight of the evidence. The evidence that was introduced at trial supported Design Studio's contention that it had no use of the improved facilities and that it benefitted only marginally from the improvements to the building.

■■ Defendant also contends that finding 12 is contrary to the manifest weight of the evidence. Finding 12 states: "That the extraordinary increase in the 1984 real estate taxes was due to the extraordinary capital improvements which resulted in the Helene Curtis Building." Defendant contends that there was no evidence in the record that the 1984 tax increase was an extraordinary real estate tax increase nor was there any evidence that an extraordinary tax increase resulted from the $20 million of capital improvements. Defendant maintains that the $20 million spent for renovating the building does not add $20 million of assessed valuation to the building. Defendant argues that the assessed valuation was the result of the building being in what it termed a "hot area," rather than the result of the $20 million renovation.

The trial court did not find that the capital improvements were worth $20 million, as noted previously. Rather, it concluded that Helene Curtis made extraordinary capital improvements that resulted in an extraordinary increase in the 1984 tax assessment. The finding is not inconsistent with the expert testimony presented at trial that if the extraordinary capital improvements had not been made, the tax increase would probably have been between 15% to 20% based on the area that the building was in. Thus it was not unreasonable for the trial court to have determined that the amount of the increase above 15% was the result of Helene Curtis' improvements.

■■ Defendant also challenges finding 13. Finding 13 states:

"That the aforementioned capital improvements made by Helene Curtis were not contemplated by Design Studio or L.I.R. at the time of the execution of the Lease and Rider, and it was not the intention of the parties *** that the portion of real estate taxes to be paid by Design Studio would be based on an increase in real estate taxes resulting from such capital improvements. It was the intention of L.I.R. and Design Studio that Design Studio's portion of real estate taxes be based on

the property with the Exhibitor's Building."
Defendant maintains that this finding is inconsistent with the language in the lease which permitted improvements and remodeling. Defendant, however, presented no evidence to contradict this finding. To the contrary, there was sufficient evidence before the court indicating that neither Design Studio nor Daniel Comroe, the owner of the Exhibitors Building at the time the initial lease was signed, intended the tax escalation clause to apply under the circumstances at issue here. We believe that this finding was consistent with the evidence presented in the trial court.

■ Defendant also contends that finding number 14 is contrary to the manifest weight of the evidence and contrary to law. Finding 14 states:

> "That equity and fairness therefore require that Design Studio's payments for the 1984 real estate taxes, and for each year thereafter, until the end of the Lease, including any extensions or renewals of the Lease, should be based on the property with the Exhibitors Building or, in other words, the property as it was before the aforementioned capital improvements which resulted in the Helene Curtis Building."

Defendant's contention regarding this finding is that equity and fairness require that Design Studio should pay for the benefits it has received. Furthermore, defendant claims that the value of Design Studio's leasehold interest has increased because of the improvements and that Design Studio should not be allowed to avoid paying its fair share of that increase. Defendant points out that finding 14 does not take into account higher real estate taxes due to increased land values in the area, nor does it require Design Studio to pay its fair share of any real estate tax that might arise due to improvements made by Design Studio to its own premises.

This finding is consistent with the trial court's determination that the tax escalation clause of the lease was intended to be based upon the land as improved with the Exhibitors Building. In light of that determination, we conclude that this finding also is proper.

■ Defendant also challenges finding 15, which states:

> "That if the *** capital improvements had not been made, the real estate taxes on the property with the Exhibitors Building would have increased by approximately 15% for 1984 real estate taxes due to the quadrennial reassessment. *** If the construction had not taken place, the real estate taxes for 1984 would therefore have increased by approximately 15% over the 1982 real estate taxes. Using this 15% factor, the real estate

taxes for 1984 on the property with the Exhibitors Building would have been $140,922.55."

Defendant challenges the 15% figure used by the court, pointing out that the testimony of Maurice Connors, the director of deputy assessor in charge of assessments and evaluations was that the overall increase would probably be between 15% and 20%. Defendant contends that the trial court arbitrarily used the lowest possible increase, rather than market value or comparable building prices, which Connors had testified were significant aspects of determining value.

It was within the discretion of the trial court to use the 15% rather than the 20% figure to determine what the tax increase for the Exhibitors Building would have been following the quadrennial reassessment. On appeal, the issue is whether the finding reached by the trial court was reasonable in light of the facts presented, not whether the court could have reached other conclusions. Since evidence was presented that the tax increase could have been 15% had Helene Curtis not made the improvements to the building, there is no basis for setting the finding aside despite the testimony by Connors that the increase could have been as high as 20%.

Finding 16 states:

"That the 1984 real estate taxes on the property with the Helene Curtis Building were $488,309.82. The ratio between the taxes on the property with the Exhibitors Building as determined in paragraph 15 to taxes on the property with the Helene Curtis Building is 28.86%."

Defendant contends that this finding should be set aside as the result was arrived at by using the 15% tax increase estimate. Defendant also contends that finding 16 is based upon the clearly erroneous finding that the lease limited Design Studio's obligation to pay a portion of the real estate tax increase to the condition of the building as it existed at the time the February 16, 1979, lease with L.I.R. Associates was made.

It was undisputed that the 1984 real estate taxes on the property with the Helene Curtis Building were $488,309.82. Having determined that finding 15 was proper, we decline to set aside finding 16 as it simply states the mathematical ratio between taxes on the Exhibitors Building and on the building as it now exists.

Defendant also objects to findings 17 and 18, restating previous arguments as to the interpretation of the lease and the appropriateness of using the 15% tax increase figure testified to by Mr. Connors. For the reasons stated above, findings 17 and 18 will not be set aside.

■ Defendant's final argument is that the trial court abused its

discretion in entering a temporary restraining order, restraining Helene Curtis from interfering with Design Studio's possession of the premises. Defendant urges that the temporary restraining order should not have been entered because Design Studio had a full, complete and adequate remedy in a forcible detainer action at law. See *Kanter & Eisenberg v. Madison Associates* (1986), 144 Ill. App. 3d 588, 592-93, 494 N.E.2d 493, *aff'd* (1986), 116 Ill. 2d 506.

The entry of the temporary restraining order was never appealed by Helene Curtis and the propriety of the order is raised for the first time here. While a temporary restraining order is appealable under Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1); *Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 178, 303 N.E.2d 1), an appeal must be filed with 30 days of the entry of the order sought to be reviewed or the right to challenge the ruling will be lost. (*Baird & Warner, Inc. v. Gary-Wheaton Bank* (1984), 122 Ill. App. 3d 136, 138-39, 460 N.E.2d 840.) As defendant did not file a timely appeal in the trial court, the issue is waived here.

For the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

MANNING, P.J., and CAMPBELL, J., concur.