602

*In re* J.S., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Frances Richko, Respondent-Appellant).

First District (2nd Division)   Nos. 1—89—0570, 1—89—2802 cons.

Opinion filed December 31, 1990.

Ronald S. Fishman, of Fishman & Fishman, Ltd., of Chicago, for appellant.

Patrick T. Murphy, Public Guardian, of Chicago (Susan Tone Pierce, Anita Weinberg, and Michael G. Dsida, of counsel), for appellee J.S.

JUSTICE SCARIANO delivered the opinion of the court:

Respondent Frances Richko (Frances) appeals from several orders which effectively ended her and her husband's, Vincent Richko's (Vincent) (collectively Richkos), custody of J.S., a minor, and which eventually granted custody, under the protective supervision of the Cook County Probation Department (Probation Department), to Lee and Christine S. (Lee and Christine), her parents. Frances, J.S.'s maternal aunt, claims that she was a "responsible relative" of the child under the provisions of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 801—1 et seq.) (the Act) and was thus entitled to the rights of a party to the proceedings that resulted in the orders from which she appeals.

Christine has a history of mental illness and was hospitalized in a mental health facility when J.S. was born to her on May 24, 1986. Christine gave Frances custody of J.S. after the girl's birth.

When Lee and Christine later requested custody of J.S. from the Richkos, they refused. On June 18, 1987, Frances filed a "Petition for Adjudication of Wardship" under section 2—13 of the Act (Ill. Rev. Stat. 1987, ch. 37, par. 802—13), claiming that J.S. was a neglected and dependent minor and asking that J.S. be adjudged a ward of the court.

The circuit court appointed a guardian *ad litem* for J.S. and ordered that temporary custody be given to the Richkos. Following investigations by social service agencies, the court vacated the Richkos' temporary custody of J.S. and granted temporary custody to the Department of Children and Family Services (DCFS). The court ordered, however, that J.S. was to continue living with the Richkos pending a further investigation, with which the Richkos were ordered to cooperate. Frances does not appeal from these orders.

On August 10, 1988, a juvenile warrant was issued for J.S. at the request of the Probation Department, which charged that she was "dependent and neglected," under sections 2—3(1) and 2—4(1) of the Act (Ill. Rev. Stat. 1987, ch. 37, par. 802—3(1), 802—4(1)). During a hearing on August 19, 1988, in which the Richkos were not invited to participate, the Probation Department requested that the warrant be quashed and recalled. An officer of that department testified that although the warrant had been issued because the Richkos had moved from where they had been living without notifying DCFS or the Probation Department, J.S. was no longer living with the Richkos and probably would not be living with them in the future. The court therefore ordered the warrant quashed and continued the case to a later date. Frances appeals from this order, claiming that the court thereby approved J.S.'s removal from the physical custody of the Richkos.

Frances filed an "Emergency Petition for Temporary Custody" on August 25, 1988, asking for temporary custody of J.S. during the pendency of the proceedings. At the hearing on that petition on August 30, 1988, Frances claimed that she had filed it in order to obtain review of the DCFS's decision to end J.S.'s placement with the Richkos.

Debbie Palmer (Palmer) of DCFS testified that the Department had planned since February 1988 to eventually reunite J.S. with her parents. The Richkos, according to the testimony, had attempted to sabotage this plan by failing to cooperate in the scheduling of visits between J.S. and her parents and by referring to J.S. as "Michelle," rather than by her own name. Additionally, the juvenile court's department of clinical services had recommended removing J.S. from the Richkos' home on the ground that continued placement with that couple was not in J.S.'s best interests.

Palmer further testified that she was unable to locate the Richkos between August 10 and 17, 1988, at the address listed for them. In light of DCFS's belief that J.S.'s interests would be better served by her placement in a new foster home, its failure to locate the Richkos prompted DCFS to attempt to remove J.S. from the Richkos' physical custody. Vincent Richko called DCFS on August 17, 1988, and was in-

structed by Palmer to return J.S. to DCFS. Palmer testified that when she was returned to DCFS, J.S. was wearing shoes that were too small and clothing that was dirty and unwearable and did not fit properly.

Frances testified that Christine gave her custody of J.S. after the girl's birth, explained the reasons for calling the girl "Michelle," claimed that she had complied with the court's request to no longer do so, and claimed that DCFS, not the Richkos, was responsible for DCFS's inability to locate the Richkos prior to removing J.S. from their custody. She also testified that Lee and Christine were responsible for any difficulties in arranging visits between J.S. and her parents. Frances further stated that for more than two years since J.S.'s birth, she had lived with the Richkos, and that they could provide better care for her than an emergency foster home, at least until a later hearing could determine Christine's rights to custody of J.S.

Upon a motion filed by Lee and Christine, by J.S.'s guardian *ad litem* and by the assistant State's Attorney, all of whom agreed that DCFS's removal of Jennifer from the Richkos' home was justified, the court, while noting a preference for placing J.S. with relatives, held that J.S's best interests were served by continuing her care in the new foster home. The court denied Frances' petition, but granted the Richkos supervised visitation after September 30, 1988, at DCFS's discretion.

Frances' "Notice of Interlocutory Appeal" states that she appeals from an order of August 25, 1988. Because that order, however, granted Frances leave to file her "Emergency Petition for Temporary Custody," we assume, given the argument in her brief, that she is appealing from the circuit court's August 30, 1988, denial of her emergency petition.

Following this decision, Frances attempted to depose Lee and Christine, J.S.'s guardian *ad litem*, and Palmer. She also requested discovery of medical, psychological, investigative and other records concerning J.S., Lee and Christine, and the custody matter in general. After an October 12, 1988, hearing on motions by the deposed parties to quash the notices to take depositions and for other discovery, the circuit court granted the motions.

The court held that while the Richkos were legally "responsible relatives" during the time they had temporary custody of J.S., the vacation of that temporary custody and its placement with DCFS transformed the Richkos' status to that of "foster parents." When DCFS terminated that relationship and placed J.S. in another foster home, the Richkos became "former foster parents." The court held that the

Act gave the Richkos the right to be heard in proceedings regarding J.S.'s disposition and also the right to representation by an attorney, but gave them no right to discovery. Frances appeals from this order.

During the November 2, 1988, hearing on DCFS's petition charging that J.S. was a dependent and neglected child, the State dropped the charge of neglect. Christine admitted the allegations of the petition that J.S. was dependent and without proper parental care. The court so found, ordered a supplemental investigation and set a date for a dispositional hearing.

During the November 2 hearing, the Richkos asked the court to undertake an independent review of an alleged "deal" between the State's Attorney and DCFS that had been allegedly arranged without consultation with the Richkos. The court refused. Frances appeals from this decision.

Following further investigations by social service agencies, J.S.'s dispositional hearing was held on February 1, 1989. Frances moved for temporary or permanent custody of J.S., claiming that the child had been wrongfully removed from the Richkos' home and that granting permanent custody of J.S. to DCFS with placement in a foster home would be harmful to the child.

. The court granted the State's oral motion to strike Frances' request, holding that while, as former foster parents, the Richkos had a right to be heard, the court had already resolved the issue of their custody of J.S. After obtaining Christine's consent, the court found that J.S.'s parents were unable to care for her, that her best interests lay in making her a ward of the court and in granting permanent custody of J.S., with the right to place for adoption, to DCFS. Frances also appeals from this decision.

Frances filed her appeal of the above matters on March 1, 1989. During the months following the grant of permanent custody to DCFS, various progress reports were filed by social service agencies involved in the attempt to reunite Jennifer with her parents. The reports indicate that Lee and Christine participated in counseling, that they improved their relationship with each other and with J.S., and that J.S.'s overnight visits with Lee and Christine were successful. Despite Frances' claims to the contrary in oral argument before this court, the reports disclose evidence that Christine was successfully being treated for her mental illness and was considered by her doctor to be capable of caring for J.S.

Lee and Christine filed a "Supplemental Petition for Return" on September 6, 1989, requesting vacation of DCFS's guardianship of J.S. and the grant of permanent custody to themselves, under the ini-

tial supervision of DCFS and Catholic Charities. Catholic Charities, which had been involved in the investigation of the relationship between J.S. and her parents, supported the petition, as did the family counseling service which had cooperated with DCFS in counseling the child and her parents.

Frances contends that Lee and Christine improperly moved on July 31, 1989, to exclude the Richkos from any further proceedings involving J.S. She then moved to strike that motion and for a grant of attorney fees incurred in responding to it. The record discloses a "Notice of Motion" but indicates neither the content of nor the basis therefor.

A hearing on Lee and Christine's petition for custody was held on September 21, 1989. During this hearing, Lee and Christine withdrew their "motion *** to exclude the foster parents from the proceedings" on the ground that it had become moot. The court denied Frances' request for attorney fees.

Frances then objected to Lee and Christine's "Petition for Return," arguing that a full hearing should be held to determine whether J.S. should be returned to her natural mother. Frances pointed out to the court that Christine had stated earlier in the year that she was unable to care for J.S. and that she was being treated for manic depression and schizophrenia. Frances also claimed that there was no evidence that Christine's condition had changed or that she was capable of caring for J.S.

The court, however, after finding that the guardian *ad litem*, DCFS and the State agreed that Lee and Christine's petition should be granted, denied Frances' request. The court held that as "foster parents," the Richkos had a right to be heard, and that they had been heard, but that they had no right to an evidentiary hearing.

The court then held that J.S.'s best interests were served by vacating DCFS's guardianship, that Lee and Christine were able to adequately care for J.S. and that she would therefore be placed in the custody of her parents under a supervisory order lasting at least 12 months. The order required Lee and Christine to provide all necessary care for J.S., to cooperate with DCFS, to continue in individual and in family counseling, to enroll J.S. in an appropriate care program and to make J.S. accessible to the court and to the guardian *ad litem*. The court also ordered Christine to continue her medical treatment. Frances appeals from this decision as well.

The State contends that this court has no jurisdiction to review the orders of August 19, 1988, August 30, 1988, October 12, 1988, and November 2, 1988, because Frances did not file an appeal within

30 days from the time each of those orders were issued. Frances filed her appeal on March 1, 1989.

■ Frances originally claimed that this court's jurisdiction to review the above orders was based either upon Supreme Court Rule 307(a)(1) or Supreme Court Rule 304(b)(1), but in response to the State's motion to dismiss the appeal from those orders, Frances maintains that this court's jurisdiction is based upon Supreme Court Rule 307(a)(6). (See 134 Ill. 2d Rules 307(a)(1), (b)(1), (a)(6).) That rule allows an appeal from an interlocutory court order "terminating parental rights." That rule, however, also requires that any "appeal must be perfected within 30 days from the entry of the interlocutory order by filing a notice of appeal." (134 Ill. 2d R. 307(a)(6).) As held in *Stoller v. Village of Northbrook* (1987), 162 Ill. App. 3d 1001, 1005, "Jurisdiction only exists where a party files his notice of interlocutory appeal within the 30-day limitation." See also *Design Studio International, Inc. v. Chicago Title & Trust Co.* (1989), 185 Ill. App. 3d 797, 808.

■ Frances asserts that her appeal from the above orders need not have been filed within the 30-day deadline because "[p]iecemeal appeals are not favored *** in Illinois." (*Voss v. Lincoln Mall Management Co.* (1988), 166 Ill. App. 3d 442, 451.) *Voss*, however, decided whether to allow a permissive interlocutory appeal under Supreme Court Rule 308. The lack of favor with piecemeal appeals may justify a court's decision not to allow appeal of interlocutory orders until the rights of the parties have been finally determined, in cases where the court has the discretion whether or not to hear the appeal. (*Voss*, 166 Ill. App. 3d at 451-52.) Supreme Court Rule 307(a)(6), however, allows appeals from interlocutory orders as of right. It is irrelevant for the purposes of an appeal under Rule 307(a)(6) whether piecemeal appeals result, as the rule itself is an exception to the policy stated in *Voss*.

Further, *Voss* does not imply that a party could avoid the effect of the deadlines set forth in Rule 308 for filing appeals from interlocutory orders. Rather, *Voss* assumes that a permissive appeal has been properly filed, but that it might not be heard because it would result in piecemeal litigation.

■ Therefore, because this court does not have jurisdiction to review the circuit court orders of August 19, 1988, August 30, 1988, October 12, 1988, and November 2, 1988, the appeals from those orders are dismissed.

As to Frances' appeals from the orders of February 1, 1989, denying her request for temporary or permanent custody of J.S. and granting permanent custody of J.S. to DCFS, she avers that as a "re-

sponsible relative" of J.S. under the Act, she was a party to the proceeding, pursuant to section 1—5(1) (Ill. Rev. Stat. 1987, ch. 37, par. 801—5(1)), and was entitled to an evidentiary hearing on her petition for custody of J.S.

The circuit court held on November 2, 1988, however, that while the Richkos were "responsible relatives" during the time they had temporary custody of J.S., the vacation of that temporary custody and its grant to DCFS terminated the Richkos' status as responsible relatives, and the Richkos became "foster parents." When DCFS removed J.S. from the Richkos' home, they became "former foster parents," having a right to be heard, but no longer parties to the proceeding.

■ Frances' failure to properly appeal from this judgment, which determined her status as a nonparty and thus determined her accordant rights, renders that judgment final. "In general a party's failure to timely appeal an order appealable under Rule 307(a) renders that order the law of the case and that part of the resulting judgment *res judicata*." (*Wolfe v. Illini Federal Savings & Loan Association* (1987), 158 Ill. App. 3d 321, 324.) Therefore, when the February 1, 1989, and September 21, 1989, orders were entered, Frances had the same, but no greater, rights than any other former foster parent.

■ As a "previously appointed foster parent" at the time of the February 1, 1989, order, Frances had the "right to be heard by the court, but [did] not thereby become a party to the proceeding." (Ill. Rev. Stat. 1989, ch. 37, par. 801—5(2). See *In re Jennings* (1977), 68 Ill. 2d 125, 130.) She was not, therefore, entitled to an "evidentiary hearing," and the circuit court's order of February 1, 1989, is accordingly affirmed.

Likewise, Frances' appeal from the order of September 21, 1989, granting to Lee and Christine custody of J.S. under the protective supervision of the Probation Department, pursuant to section 2—24 of the Act (Ill. Rev. Stat. 1989, ch. 37, par. 802—24), must also fail. As a former foster parent and nonparty to the proceeding, Frances had no right to discovery of or to controvert the contents of "the reports prepared for the use of the court and considered by it." (Ill. Rev. Stat. 1989, ch. 37, par. 802—22(2).) She had only the right to be heard, a right which she does not contend was denied.

■ Frances' claim that the court erred in not holding a hearing to determine the fitness of Lee and Christine to care for J.S. is also without warrant. Frances relies on section 2—23(1)(a) of the Act (Ill. Rev. Stat. 1989, ch. 37, par. 802—23(1)(a)), which prohibits the restoration to any parent found by the court to have caused a child to be

neglected or abused under section 2—3 (Ill. Rev. Stat. 1989, ch. 37, par. 802—3) without a hearing to determine that parent's fitness to care for the child. J.S., however, was not found to be neglected or abused, and the section of the Act relied upon is therefore inapplicable to this case.

■ The assistant State's Attorney, DCFS and J.S.'s guardian *ad litem* all stipulated that J.S.'s best interests would be served by a grant of custody to Lee and Christine under the protective supervision of the Probation Department, and the court had several reports before it, all indicating agreement with such a disposition. Accordingly, we find no reason to disturb the circuit court's grant of custody to Lee and Christine under the condition it imposed on such custody, and its decision is therefore affirmed.

Finally, Frances appeals from the denial by the circuit court of her request for attorney fees resulting from the allegedly improper petition brought by Lee and Christine to exclude her from the September 21, 1989, dispositional hearing. The record, while indicating that a motion to exclude Frances was made, contains neither a copy of the motion nor any of the bases upon which it was advanced.

■ The appellant is obliged to present a complete record on appeal, "so the reviewing court will be fully informed regarding the issues in the case. A reviewing court will not consider anything which is not contained in the record." (*International Amphitheatre Co. v. Vanguard Underwriters Insurance Co.* (1988), 177 Ill. App. 3d 555, 564.) Without sufficient evidence that an improper petition warranting a grant of attorney fees to the Richkos was filed, this court has no alternative but to affirm the circuit court's denial of Frances' request.

The appeals from the orders of August 19, 1988, August 30, 1988, October 12, 1988, and November 2, 1988, are dismissed for want of jurisdiction. The orders of February 1, 1989, and September 21, 1989, are affirmed.

Appeal dismissed in part; affirmed in part.

HARTMAN and BILANDIC,* JJ., concur.

---

*Judge Bilandic participated in the decision of this case prior to taking office as a supreme court judge.